## PERSONAL FINANCE COMPANY OF NEW HAVEN
*vs.*
## ALBERT L. VIGNEAULT

Court of Common Pleas   New Haven County   File No. 32342

MEMORANDUM FILED APRIL 11, 1942.

*Donald E. Cobey,* of New Haven, for the Plaintiff.

*Charles G. Albom,* of New Haven, for the Defendant.

DEVLIN, J. On March 1, 1941, defendant and his wife signed a note jointly and severally promising to pay plaintiff $130 in 17 monthly installments of $9.39 each. This note was a renewal, the original loan being for $200 and the reason for the renewal was the lowering of the monthly pay-ments in view of the change in the financial position of the named defendant.

At the time of this renewal, the defendant filled out a financial statement at the request of the plaintiff which stated that "for the purpose of showing my ability to repay the same and to induce you to grant said loan, I hereby declare that a list of all my debts and liabilities is as follows...." Seven items were thereafter listed showing an outstanding indebted-ness of $437.65. In fact, at that time, the defendant owed bills in the amount of $1,205.11, not including the indebted-ness to plaintiff which at that time amounted to $128.65.

The plaintiff in the first count alleges that $117.23 is due and owing on the account since May 6, 1941, and in the second count claims fraud.

By way of special defense defendant alleges that on June 19, 1941, he filed a bankruptcy petition and it is agreed by counsel that a discharge was granted August 7, 1941.

With respect to the first count, there is no question that the defendant owed the amount claimed to be due.

As to the second count, whether the omission to include

all of the outstanding liabilities existing at the time is such a materially false statement as to constitute fraud the courts are overwhelming in accord that it is. *In re Boyd,* 34 F. Supp. 695; *In re Graham,* 22 id. 233; *In re Fackler,* 246 Fed. 864; *In re Maaget,* 245 id. 804.

To the plaintiff's claim that, there being fraud involved, this debt was not discharged by the bankruptcy, the defendant makes a distinction between section 17a(2) and section 14c(3) of the Bankruptcy Act (Act of June 22, 1938, 52 Stat. 850, 851) the pertinent sections of which follow:

§17a(2) [U.S. Code, tit. 11, §35(a)]: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as.... (2) are liabilities for obtaining money or property by false pretenses or false representations...."

§14c(3) [U.S. Code, tit. 11, §32(c)]: "The court shall grant the discharge unless satisfied that the bankrupt has.... (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition...."

It is his claim that fraud in procuring an extension or renewal of credit may be urged by the creditor in the bankruptcy hearing as ground for the denial of a discharge but once the discharge is granted the only fraud which is material in a suit to establish a claim within the exceptions to the operation of the discharge is in "obtaining money or property." It will be noted that section 17a(2) omits the procurement of a renewal or extension of credit as an exception to the operation of a general discharge. The claim is then advanced that the renewal of a note induced by false pretenses does not constitute an obtaining of "property" within the meaning of the Act.

By failing to object to a discharge one does not waive his rights where fraud is involved. A creditor has the option of interposing a bar to a discharge affecting all debts, or of permitting the discharge to be granted, and of then asserting his claim on after-acquired property on the ground that his claim was not affected by the discharge. *Talcott vs. Friend,* 179 Fed. 676, 24 Am. B.R. 708.

"Section 17a(2), which provides that a liability for obtaining money or property by false pretenses or false representations will not be affected by a discharge and §14c(3) are not mutually exclusive, or even *pari materia*. Section 17a(2) is broader in scope than §14c(3) which is limited in its application to credit transactions that result from a false statement in writing. Section 17a(2) is for the benefit of a particular creditor whose claim is covered thereby, and is to be invoked only by him, whereas §14c(3) is not for the benefit of any particular creditor or class of creditors, for by the express terms of §14b it may be invoked by the trustee, creditors, or the Government to defeat the discharge entirely." 1 *Collier, Bankruptcy* (14th ed. 1940) p. 1342.

As to the claim that no property was surrendered, it appears that a new note was executed upon different terms and the old note was surrendered to the defendant. Was the surrender of the old note the "obtaining of property" within the meaning of section 17a(2)?

In dealing with this question the Supreme Court in *Gleason vs. Thaw,* 236 U.S. 558, 561, 34 Am. B.R. 177, 180, stated: "At most it [property] denotes something subject to ownership, transfer or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business and the same significance attaches to it in many carefully prepared writings."

Again, in *Samet vs. Farmers' & Merchants' Nat. Bank,* 247 Fed. 669, 671, 40 Am. B.R. 450, 451, where defendant in reliance upon a false financial statement by plaintiff allowed him to give new notes in place of old ones, the court in upholding a decree refusing him a discharge stated: "A note is property because of the value of the contract which it represents. . . . Property is a term of very broad signification, embracing everything that has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition. . . .

"It is true that when a note is surrendered at maturity, and a new note taken merely as a renewal, the debt is not paid, nevertheless the old note and the renewal are two different pieces of property because they represent two different contracts. One represents a contract with the valuable quality

of the right of immediate enforcement—the other represents a contract without that right. Regarding the new note as a renewal, and not payment of the debt, when by the false statement Samet obtained from the bank the note immediately enforceable against him, he 'obtained property'; when he obtained it on promise to pay in the future, he 'obtained property on credit'; and when he did this on the strength of a 'materially false statement in writing', he forfeited under section 14b(3) his right to a discharge." *See, also, In re Weitzman,* 11 F. (2d) 897; *In re Wolf,* id. 293.

The court is of the opinion that the debt was not discharged by the bankruptcy and the special defense should not prevail.

The amount due as of May 6, 1941, was $117.23 and plaintiff now claims that it is entitled to interest at the contract rate from that date to the present. There is some authority for the position of plaintiff that interest will continue after the maturity of an instrument at the contractual rate if the parties so intend. *Globe Investment Co. vs. Barta,* 107 Conn. 276.

That such was the intention here is borne out by the clause "If the principal amount of this note is not paid at maturity, it shall bear interest at said rate" directly following the agreed rate of interest at 3% per month on the first $100 and 2% on the remainder.

Judgment may enter for the plaintiff to recover damages of $147.91 on the first count and a finding of fraud on the second count.