107 So.2d 330 (1958)
EQUITABLE SECURITIES COMPANY
v.
Robert W. SCHWANER et al.
No. 21116.
Court of Appeal of Louisiana, Orleans.
December 15, 1958.
*331 John M. Holahan, New Orleans, for defendant-appellant.
Louis E. Jung, New Orleans, for plaintiff-appellee.
McBRIDE, Judge.
This is a suit on a promissory note signed and executed by Robert W. Schwaner and his wife, payable to plaintiff's order for $300, and the defense is that Robert W. Schwaner was duly adjudged a bankrupt and granted his discharge as such and that as the plaintiff's claim was duly listed on the bankruptcy schedules, said defendant is released from any indebtedness unto plaintiff. The plaintiff contends that in connection with the transaction which gave rise to the giving of the note, Robert W. Schwaner signed what has been referred to as a financial statement reflecting liabilities of approximately $400 and plaintiff relied upon the truthfulness and verity of the statements made in the financial statement, all of which to the knowledge of Robert W. Schwaner were false and untrue and were made by him for the purpose of deceiving and defrauding plaintiff, and that he actually did defraud plaintiff.
After trial in the lower court, judgment was rendered in favor of plaintiff and against Robert W. Schwaner for the balance found to be due on the note, plus interest, etc.; the judgment is silent as to the claim against Mrs. Schwaner. Robert W. Schwaner has taken the present appeal, and whereas plaintiff has not appealed, we take it that it has abandoned the claim against Mrs. Schwaner.
As we said in De Latour v. Lala, 15 La. App. 276, 131 So. 211, 212:
"The pertinent portion of the Bankruptcy Act in this regard is section 17, as amended by Act of February 5, 1903 (11 U.S.C.A. § 35), which reads as follows:
"`Sec. 17. Debts not affected by a discharge.A discharge in bankruptcy *332 shall release a bankrupt from all of his provable debts, except such as (first) * * *; (second) are liabilities for obtaining property by false pretenses or false representations. * * *'
"Analyzing this language, it would appear to us that, before section 17 (11 U.S.C.A. § 35) would be applicable, the plaintiff must show: (1) That defendant made false representations; (2) that these representations were made with the intention of defrauding the plaintiff, and (3) that the plaintiff relied upon and was misled by the false pretenses or representations."
It is conceded that the financial statement signed by Schwaner did not list all of his debts and obligations and his statements were grossly untrue. The statement recites that he has no loans, debts or chattel mortgages outstanding except the two specifically mentioned, whereas in truth and in fact he had many creditors at the time of the making of the statement. But unless it is shown plaintiff relied upon and was misled by these false pretenses and representations, the discharge in bankruptcy relied upon by Schwaner is a complete release from the debt he owed plaintiff on the note. Personal Finance Company of Lake Charles, Inc, v. Huber, La.App., 77 So.2d 740; Seybold Finance Service, Inc. v. Schwaner, La.App., 102 So.2d 317.
Therefore, a question of fact is presented to the court for consideration and a decision of the case rests upon the court's conclusion thereon. Did the plaintiff herein rely upon the false and misleading financial statement signed by defendant in entering into the transaction with plaintiff which led to the execution of the note sued upon?
The plaintiff is engaged in the business of making small loans. We gather that defendant had several financial transactions with it in the past. The testimony shows that on June 14, 1956, defendant borrowed money from plaintiff and gave in evidence thereof his note, the amount of which is not shown by the record. At any rate, on Setpember 20, 1956, a balance of $234.35 was due thereon. Schwaner and his wife were then desirous of refinancing that loan and securing an additional amount of cash from the plaintiff, and to that end Mrs. Schwaner had certain negotiations with plaintiff's representative, Stewart, which led to the company advancing about $65 in cash for which she and her husband gave plaintiff the note for $300 to take up their outstanding note and cover the amount of cash advanced to them.
Mrs. Schwaner explained the transaction in her own words, as follows:
"Q. Mrs. Schwaner, did you negotiate this loan? A. I negotiated the loan. I called Mr. Stewart from my home by telephone and at the time, I remember very clearly, we needed $45 and I asked Mr. Stewart if it would be possible for me to get that much money if he refinanced the note and he said, `Yes'. As a matter of fact I got more, I think it was closer to $65 and he told me it would be perfectly all right to come down. He would give me the note, I could take it over to my husband and I could bring it back.
"Q. You brought the note to your husband? A. Yes, I took the note, all the papers he gave me, several papers, I took them to him. He said, `The loan will be all right, just have Robert sign this and fill in the papers for me and bring it back and I'll give the money to you', and he gave the money in turn to me when I came back, and he asked me to sign the note, too.

*333 "Q. He asked you to sign the note at that time? A. That's correct. So I went ahead and signed it.
* * * * * *
"* * * He told me he would refinance the note, for me to come down and he would give me the note, papers, whatever it was. That was his expression. I could take it over to Bob, my husband Robert, he could sign it, I bring it back and he would give the money to me. He said it would be all right because I wouldn't make that trip to town for nothing. I asked first if it was possible and he said, `I will finance the note for $300.'"
Schwaner testified he did not arrange for refinancing of the loan and that he signed the papers at his place of business when his wife brought them to him.
Stewart first stated that it was Schwaner himself who called at his company's office to negotiate the $300 transaction. His testimony runs thus:
"Q. When were you again contacted by Mr. Schwaner? A. When he come in to raise this loan to $300.
"Q. And what date was that? A. That was on September 20th.
"Q. That was Mr. Schwaner that you contacted at that time? A. He's the one contacted me in the office.
"Q. Did Mr. Schwaner fill out all those papers in your office? A. To my knowledge and memory I think he did, yes, sir.
"Q. And he signed the note in your office? A. And signed the note and he had to get his wife to sign it."
However, on his cross-examination Stewart made contradictory statements. He said:
"Q. Mr. Stewart, on your direct examination you testified that Mr. Schwaner had come to your office, is that right? A. Yes, sir, I think I testified that.
"Q. And you also testified that he got the loan right then and there, is that right? A. If his wife was along I said he got the loan right then and there.
"Q. And now you've changed the testimony to say the wife came up and he didn't? A. It appears to be like that, that his wife came up and talked to me. Now, he might have talked to me before over the phone.
"Q. You testified that he was in your office. Now, which is the truth, Mr. Stewart? A. Well, I couldn't say what is the truth because we give her her check in payment which she'd have to get her husband to sign."
We have carefully studied and digested the quoted testimony and can come only to the conclusion that Schwaner's financial statement, although false and untrue, played no part in the transaction and plaintiff was in nowise deceived or defrauded thereby or otherwise imposed upon, and that the refinancing of the old note and the cash advance of $65 were not predicated upon the financial statement. We are convinced Stewart agreed to advance the additional cash before Mrs. Schwaner took the papers to her husband for signature, and that his signing the financial statement was merely an unimportant formality.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that plaintiff's suit as against Robert W. Schwaner be and the same is hereby dismissed. Plaintiff is to pay costs of both courts.
Reversed.