119 So.2d 578 (1960)
PUBLIC FINANCE CORPORATION OF BATON ROUGE, Plaintiff-Appellant,
v.
Frances M. JAMES, Defendant-Appellee.
No. 4967.
Court of Appeal of Louisiana, First Circuit.
March 21, 1960.
Rehearing denied April 25, 1960.
*579 Elmo E. Lear, Baton Rouge, for appellant.
Dyer & Parker, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, TATE, FRUGÉ and LANDRY, Judges.
TATE, Judge.
The plaintiff finance company appeals from the dismissal of its suit to obtain judgment upon a $792 note executed in its favor by the defendant James. The trial court held that this obligation was discharged by James' adjudication as a bankrupt in bankruptcy proceedings filed by him five weeks after he had executed the note.
The sole issue raised by this appeal is the the plaintiff finance company's contention that the liability for this note was not discharged by James' bankruptcy because his written application for the loan contained certain false statements and misrepresentations. See 11 U.S.C.A. § 35, sub. a(2); Morris Finance & Loan, Inc. v. Dickerson, La.App. 1 Cir., 57 So.2d 786.
The evidence shows that on June 26, 1958, the date the note was executed, the defendant James made application to the plaintiff's manager, James W. Sweetman, for a loan of $100 to pay his utilities and certain small creditors who were then pressing him. Sweetman persuaded James to borrow a larger amount in order to consolidate notes owed the plaintiff and two other finance companies, as well as to obtain the cash difference of $93.45.
In conformity with company policy, Sweetman required a financial statement from James setting forth obligations owed by him as of that date. On a printed form furnished by the plaintiff company, Sweetman entered the names of four finance company creditors given him by James with the amounts James stated he owed each: State Finance Company, $250; Asco Loan Company, $140; Home Finance Company, $1,200; and General Motors Acceptance Corporation, $1,200. Sweetman also recorded on the printed form information obtained from James concerning his income, to the effect that James earned $113 per week and his wife $60 per week. Sweetman *580 then handed the application to defendant who, at the manager's request, wrote thereon in his own handwriting the words, "I owe no other debts", and signed the application.
On August 4, 1958, five weeks later, James filed a petition in bankruptcy. He listed some 13 creditors (including two banks, a jeweler, a service station, a furniture store, and department and clothing stores, whose accounts aggregate approximately $1,900) who had not been mentioned in his application to the plaintiffs for a loan some five weeks earlier.
As we recently stated in Accounts Supervision Co. v. Atley, La.App., 89 So.2d 508, 509, to avoid because of an alleged misrepresentation a discharge by bankruptcy of a debtor's obligation, the creditor has the burden of proving: "(1) That defendant made false representations; (2) that these representations were made with the intention of defrauding the plaintiff, and (3) that the plaintiff relied upon and was misled by the false pretenses or representations". We are unable to hold, under the testimony presented by this record, that the trial court erred in holding that the finance company has not borne its burden of proving that it relied upon the financial statement in question when it granted the loan.
The defendant James testified that, at the time he went to plaintiff's office to borrow the sum of $100, he had told the finance company manager that he also had various running open accounts (failure to list which, substantially, is the present complaint made by the plaintiff), and that he was "in a financial mess at the time". While Sweetman, the finance company manager, testified that if the debtor had told him of these other obligations, he thought he would have listed them and then would have denied the loan; in response to a direct question as to whether the customer had mentioned any of these other debts unlisted on the statement, Sweetman also replied: "We are going back one year and to expressly say `no, sir' that is a little difficult." (Tr. 29.)
Aside from the testimony by the debtor that the existence of these debts was disclosed, we like the trial court are not disposed to accept as sincere the finance company manager's testimony that he did not suspect the existence of these not unusual (in this age of universal credit-buying) gasoline and department store open accounts, especially in the case of a debtor so hard-pressed that he needed $100 to pay his utilities and other small debts; and that he would not have loaned the money had he known of them. We think it is obvious from the record that the debtor was given his present loan in reliance upon his large gross family earnings of about $800 per month and his prior excellent credit record with the present and other finance companies, and not on the basis of the financial information contained in the loan application.
Among the circumstances that lead us to this conclusion, aside from the evaluation of the testimony made by the trial court in accepting the plaintiff's testimony, is the circumstance that, had the plaintiff's manager checked the Lender's Exchange as he stated he did, the information he would have received from it would have indicated that the debt due on the General Motors Acceptance Corporation note listed in the application was actually over $200 greater than the amount listed on the loan application and also that the plaintiff also (Tr. 28) owed the Louisiana National Bank a note in the amount of $600. Thus, despite these discrepancies, which should reasonably have led to further investigation had the plaintiff actually been innocent of the debtor's financial involvement, the plaintiff nevertheless advanced the money to defendant James.
Finding no manifest error in the trial court judgment dismissing the plaintiff's suit, it is
Affirmed.
*581 LANDRY, Judge (dissenting).
With all due respects to the majority of my brothers, I find I must dissent from the judgment rendered herein for the reason I believe the majority opinion, in effect, erroneously holds complete and exclusive reliance upon the debtor's false statement is required to bar discharge of an obligation in bankruptcy.
In addition, the majority view appears to establish the principle that if the lender does not fully rely upon the false representation and, despite such representation, undertakes a credit investigation of the debtor, the lender is then charged with the burden of making such inquiry as will fully disclose the true nature of the borrower's financial affairs.
It is my considered judgment the statement in the majority opinion to the effect the loan was predicated upon defendant's related gross income and previous credit history with plaintiff company and not on the statement contained in defendant's application, is a misinterpretation of the evidence of record. A careful reading of the entire transcript convinces me plaintiff's manager placed substantial reliance upon defendant's false declaration and it was this reliance which in fact prompted the manager Sweetman to forego a complete credit investigation of defendant's financial status.

On Application for Rehearing.
PER CURIAM.
In a very fair and full application for rehearing, the able counsel for the defendant-appellee suggests, inter alia, that error resulted from an incorrect appreciation of the facts by this court, as well as by the trial court.
Insofar as counsel contends that check with the Lender's Exchange would not have secured the exact remaining balance due to another subscribing creditor such as the General Motors Acceptance Corporation, but only the initial debt amount, he is correct (Tr. 24); but the manager further testified that a purpose of this check was to ascertain "the balance due" such creditors (Tr. 23), and that the usual procedure was to "call the creditor direct" after obtaining its name from the Lender's Exchange (Tr. 24). Counsel further contends that the finance company manager's testimony does not support the conclusion that the Louisiana National Bank note should necessarily have been reflected by this check (Tr. 28), which testimony we find upon reconsideration to be at least ambiguous in this regard.
We prefer to rest our affirmance of the trial court's conclusion that the appellee finance company had not relied upon the financial statement upon our acceptance of its evaluation of the conflicting testimony of the debtor and of the finance company manager.
Although the latter did not recollect being so informed, the creditor positively testified under oath, as to his various open accounts, that at the time he obtained the loan and executed the financial statement he and the finance company manager "had discussed the whole thing" ["my financial status"] (Tr. 12); that at the time "I told him that I owed a lot of people in town, and that I had some open accounts at Dalton's, Godchaux's, places like that" and that he was "positive about that" (Tr. 14); that the finance company manager "evidently didn't think it was necessary to put it down" that "I had some smaller debts at the time" (Tr. 14); that he "told him about these other accounts and said they were monthly payment accounts" and "he was not interested enough to take down the names and the amounts owed" (Tr. 15); that he was "sure" he told him about the Sears and Roebuck account of $258 (Tr. 16), an account which unlike the department store accounts would not be listed with the Credit Bureau (Tr. 36). The acceptance of this testimony as correct we do not find to be erroneous.
The application for rehearing is denied.
LANDRY, J., dissents from the refusal to grant a rehearing.