138 So.2d 654 (1962)
EXCEL FINANCE TREME, INC.
v.
Laurent J. NOEL.
No. 313.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1962.
*655 Gertler, Hart & Duran and David H. Seelig, New Orleans, for plaintiff-appellant.
Dudley A. Philips, Jr., New Orleans, for defendant-appellee.
Before YARRUT, JOHNSON and HALL, JJ.
JOHNSON, Judge.
The plaintiff has appealed from a judgment in favor of the defendant dismissing plaintiff's suit.
The plaintiff is in the money lending business, operating under the Small Loan Act of Louisiana, LSA-R.S. 6:571 et seq. The record shows that, sometime after giving plaintiff a promissory note for a renewal loan on January 29, 1960, defendant went into bankruptcy and listed the debt to plaintiff on his schedule. Plaintiff contends that, because the financial statement furnished to it when the loan was consummated, did not list all of defendant's debts, defendant is guilty of obtaining property by fraudulent and false representations. Plaintiff's manager testified that it relied on the financial statement as being true, and that plaintiff was induced by the financial statement to make the loan; hence, this obligation of defendant is not dischargeable in bankruptcy. 11 U.S.C.A. § 35, sub. a (2).
Plaintiff's manager testified further that plaintiff had been making loans to the defendant over a number of years; that defendant in all that time had never been delinquent on any payment; that in making this last loan, defendant was told to list all his debts, and defendant listed only the debt due Sun Finance Company for $400.00; and that plaintiff would not have made the loan but for the financial statement showing only this one debt.
On cross-examination, this witness acknowledged that he filled out the financial statement except as to the name of the one creditor and that defendant wrote that in. The manager said that he had been manager for this plaintiff for three years and that he had knowledge that the plaintiff had made a number of loans prior to his time with the plaintiff. The manager said that he was fairly well familiar with defendant's affairs and he knew that the defendant was good pay. One fact seems quite significant, and that is, on this occasion, when this defendant came in to arrange renewal of an old loan with a new note in order to obtain some cash, all papers relating to the defendant on prior loans were destroyed. He said that plaintiff had taken financial statements from defendant on different occasions, but these statements were destroyed and he did not know what they disclosed; that he did not question the defendant or otherwise investigate his financial condition.
It is entirely clear that, over a period of years, this defendant had borrowed money some fifteen times from this plaintiff; that his account had never been delinquent; and that all defendant had to do to obtain cash money over and above what he already owed the plaintiff was to ask for it. At the end of his testimony counsel for defendant asked plaintiff's manager:
"Q. And you were satisfied that Mr. Noel was a good risk and gave him the money, is that correct?
"A. Yes."
Defendant's testimony is to the effect that the first time he borrowed money from plaintiff, he was required to sign all papers *656 one day and was told to return the next day for the money, which he did; that he has made about fifteen different loans with plaintiff and, on one occasion, decided to pay plaintiff off, so he borrowed $400.00 from Sun Finance Company, but plaintiff's manager would not accept the money and refused to close out the account, and asked defendant to leave $100.00 unpaid. They finally agreed on leaving $75.00 in the account.
Defendant said he was getting deeper and deeper in debt, borrowing from one to pay to another, and he went back to the plaintiff and asked for another loan on his way to work. He told the manager he had only a few minutes in which to get to work, and the manager said "I'll have you out of here in five or ten minutes." The manager gave him a pile of papers and asked him to sign them, which he did without filling them in, and within five minutes he had the money, as was always the case except on the first occasion.
The evidence reveals that this defendant made many loans with plaintiff over a period of seven or eight years. It is apparent that a somewhat easy and loose arrangement or understanding had developed between the plaintiff and the defendant, and on this last occasion, as on many others, plaintiff accepted defendant's note, gave him the money without the so-called financial statement actually playing any part whatsoever in it. Defendant said that on this last occasion he filled in the name of one debt as he was instructed to do by the manager of plaintiff.
The plaintiff has fallen far short of proving that the financial statement was given with fraudulent intent or that the loan was made in full reliance on the financial statement. We are not impressed with plaintiff's testimony in this case. We note that in an increasing number of cases of this same pattern the innocent borrower is at a complete disadvantage. The loan company manager tells the borrower to fill in the financial statement, and also tells him that it is only necessary to list one or two debts as a formality. The loan company employee knows the significance of this, but the borrower does not. The facts here are almost exactly the same as in Excel Finance Mid City, Inc., v. Meilleur, 137 So.2d 503, decided by this Court on February 5, 1962. See also CHF Finance Company v. Jochum, 241 La. 155, 127 So.2d 534; In re Noble, D.C., 42 F.Supp. 684; Public Finance Corporation of Baton Rouge v. James, La.App., 119 So.2d 578; Equitable Securities Co. v. Schwaner, La.App., 107 So.2d 330; Seybold Finance Service, Inc. v. Schwaner, La.App., 102 So.2d 317; DeLatour v. Lala, 15 La.App. 276, 131 So. 211.
The judgment is affirmed at the cost of plaintiff-appellant.
Judgment affirmed.