194 So.2d 781 (1967)
FELICIANA FINANCE COMPANY, Inc., Plaintiff-Appellant,
v.
Hershel Daniel BATEMAN, Defendant-Appellee.
No. 6919.
Court of Appeal of Louisiana, First Circuit.
January 30, 1967.
Gerard E. Kiefer, of Forrest, Kiefer & Hubbs, Baton Rouge, for appellant.
C. Jerome D'Aquila, of Picou & D'Aquila, New Roads, for appellee.
Before LOTTINGER, REID and SARTAIN, JJ.
SARTAIN, Judge.
Plaintiff, a finance company doing business in St. Francisville, Louisiana, filed this suit against Hershel Daniel Bateman, in the sum of $939.07, together with interest and attorney's fees, said sum allegedly representing the unpaid balance on Bateman's note held by plaintiff. The note sued on is *782 dated December 5, 1964, and is in the principle sum of $1,024.08.
Defendant urged that plaintiff's recovery on the note in question is barred by defendant's discharge in bankruptcy, on August 31, 1965.
The trial court rendered judgment in favor of the defendant, rejecting and dismissing plaintiff's suit. Plaintiff has appealed from this adverse judgment. The testimony of the witnesses on the trial below was not recorded. However, the trial judge rendered written reasons for judgment and it was stipulated between counsel for the parties herein that the trial judge's written reasons for judgment would serve in lieu of a narrative of facts.
The record shows that the defendant was a customer of plaintiff for some time prior to December 5, 1964. He had previously requested of plaintiff the loan of an additional $200.00. This initial request was not granted. According to Mr. Harper, plaintiff's manager, defendant's record gave him a reputation of "good payer". After some delay and to give defendant a chance to further reduce his existing loan balance, Mr. Harper sent word to defendant to come by and see him. On December 5, 1964 defendant went to plaintiff's office and Mr. Harper conducted a loan interview. The additional $200.00 was loaned to the defendant and the note now sued on was executed by defendant. During the course of the loan interview, defendant was asked to fill out a financial statement. This he did and listed as his other obligations, one debt owed to "Carl Delaney Go" in the amount of $26.85, and "no other debts." This statement was signed by defendant. Defendant contends that he was not requested to list all of his other debts and was told by Mr. Harper to write in "no other debts". Mr. Harper, manager of plaintiff's office in St. Francisville testified he had told Mr. Bateman what the financial statement was for and that he had to have it completed including the expression "no other debts". He denied giving defendant any instructions not to make a full disclosure.
Defendant's petition in bankruptcy, filed March 31, 1965 listed five additional obligations totaling $3,254.13. Each of these obligations predated the financial statement of December 5, 1964.
The trial judge, while holding that the defendant did not give a full disclosure of his debts and that the financial statement was "false and fraudulent", concluded that the plaintiff did not rely on the said statement in granting the loan. In his written reasons for judgment he stated:
"The testimony of Mr. Harper was that after obtaining the financial statement, he did not rely on it and then made the loan. Rather he discussed the loan with his Clinton Office and checked with the Credit Bureau. Also he commented that the granting of the loan was in at least partial consideration of Mr. Bateman's past record of "good pay." These facts considered the court cannot find nor hold that there was reliance upon the false financial statement as the basis for the loan." (Emphasis ours.)
The law applicable to the facts in this case came about in 1960 by congressional amendment to the Bankruptcy Act. Prior thereto the obtaining of money, property or credit through fraud or misrepresentation barred the complete discharge in bankruptcy of the debtor. The 1960 amendment, however, made it clear that a debt for a loan or extension of credit induced by false statements written by the non-business bankrupt debtor with intent to deceive, would not be affected by a discharge in bankruptcy as to the particular obligation obtained through such efforts.
11 U.S.C.A. § 35(a) (2) [Bankruptcy Act § 17(a) (2)], as amended in 1960, reads in part
"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable *783 debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *."
Therefore, the effect of the 1960 amendment is to take this case out of the bankruptcy proceedings themselves, prevent these grounds as a bar to complete discharge and to place this type of case in the jurisdiction of the state courts for a determination as to the discharge of the individual debt involved. White v. Public Loan Corp., 8 Cir., 247 F.2d 601.
It has been the well settled law of this state, even prior to 1960, that for the above quoted provision of the Federal Bankruptcy Act to be applicable, the creditor relying thereon bears the burden of establishing: (1) The defendant made false representations; (2) Those representations were made with the intent of defrauding the plaintiff; (3) The plaintiff relied upon and was misled by the false representations. C H F Finance Company v. Jochum, 241 La. 155, 127 So.2d 534; Beneficial Finance Company, Inc. v. Gardache, La.App., 164 So.2d 132; Cash Finance Service No. 3, Inc. v. Rhoden, La.App., 145 So.2d 79; De Latour v. Lala, 15 La.App. 276, 131 So. 211; Seaboard Finance Corp. v. Stipelcovich, La.App., 176 So.2d 170.
Plaintiff urges in brief that the testimony of Mr. Harper was contrary to the trial court's finding of fact. Thus, it must be construed that plaintiff is urging that the District Judge committed manifest error in finding that there was no reliance upon the false statement as a basis for the loan. However, there is no transcript of the testimony and we cannot hold that the District Judge did in fact commit manifest error in this particular finding of fact.
Indeed, the mere fact that there was a financial statement made on plaintiff's form in front of plaintiff's loan manager does not by itself show manifest error on the part of the trial judge who, after hearing all of the evidence at the trial, concluded that plaintiff did not rely on the false statement. In Public Finance Corporation of Baton Rouge v. James, La.App., 119 So.2d 578, a false financial statement was given. However, the plaintiff was held to have failed to bear the burden of proving that such statement was relied upon in view of defendant's testimony that he had discussed his "financial mess" with plaintiff's manager.
Certainly, as a matter of law, a trial judge may decide from all the evidence presented before him that a finance company did not rely on a falsified financial statement of a borrower, but rather relied on other factors such as past dealings with the borrower and his good pay record. Excel Finance Treme, Inc. v. Noel, La. App., 138 So.2d 654.
Plaintiff urges in brief that the trial judge erred in failing to hold that the false financial statement was sufficient evidence to establish defendant's intention to deceive, citing Liberal Finance Gentilly, Inc. v. Brister, La.App., 152 So.2d 331. Plaintiff further argues that upon the showing that a false financial statement was in fact given, then the burden shifts to the defendant to show that the same was not given for the purpose of deception. We do not believe that this last cited authority is controlling here, as the facts therein are clearly distinguishable from those in the instant matter. In the above cited case, decided by us on March 29, 1963, we stated (page 335):
"The evidence in the case at bar convinces us that plaintiff's Manager, Morrell, was unaware of defendant's aforesaid *784 false representation; that defendant willfully and intentionally falsified the financial statement in question; that the misrepresentation shown was with the intention of defrauding plaintiff and that plaintiff relied thereon to plaintiff's detriment." (Emphasis added now.)
On the other hand, in the instant matter the plaintiff admitted that the financial statement was not relied upon. Thus plaintiff's own testimony negates the third requirement, namely: that the false financial statement must be relied upon to plaintiff's detriment. It is clear that in such a situation as this the burden of proof does not shift and the trial judge was correct in his holding that plaintiff "failed to make satisfactory proof of any intent to deceive * * *."
While it may well be argued that unwarranted consideration is given to a person who knowingly makes a false financial statement, there are other abuses just as damaging to the welfare of the general public. Such abuses were noted in the congressional hearings relative to the 1960 amendment to the Federal Bankruptcy Act.
"The committee believes that complete denial of a discharge is too severe a penalty in the case of the individual non-commercial bankrupt. It is also a penalty which experience has shown to be subject to abuse. An unscrupulous lender armed with a false financial statement has a powerful weapon with which to intimidate a debtor into entering into an agreement in which the creditor agrees not to oppose the discharge in return for the debtor's agreement to pay the debt in full after discharge. The creditor may also accomplish his purpose of preserving his debt by not opposing the discharge and then suing in a State court on the ground that the debt is not dischargeable. Testimony before the Subcommittee on Bankruptcy and Reorganization by experts in bankruptcy law indicates that unscrupulous lenders have frequently condoned, or even encouraged, the issuance of statements omitting debts with the deliberate intention of obtaining a false agreement for use in the event that the borrower subsequently goes into bankruptcy." 1960 U.S. Code Congressional and Administrative News, page 2955.

* * *
Our brethern of the Fourth Circuit, stated in Excel Finance Treme, Inc. v. Noel, La. App., 138 So.2d at page 656:
"The plaintiff has fallen far short of proving that the financial statement was given with fraudulent intent or that the loan was made in full reliance on the financial statement. We are not impressed with plaintiff's testimony in this case. We note that in an increasing number of cases of this same pattern the innocent borrower is at a complete disadvantage. The loan company manager tells the borrower to fill in the financial statement, and also tells him that it is only necessary to list one or two debts as a formality. The loan company employee knows the significance of this, but the borrower does not. The facts here are almost exactly the same as in Excel Finance Mid City, Inc., v. Meilleur, La.App., 137 So.2d 503, decided by this Court on February 5, 1962. See also CHF Finance Company v. Jochum, 241 La. 155, 127 So. 2d 534; In re Noble, D.C., 42 F.Supp. 684; Public Finance Corporation of Baton Rouge v. James, La.App., 119 So.2d 578; Equitable Securities Co. v. Schwaner, La.App., 107 So.2d 330; Seybold Finance Service, Inc. v. Schwaner, La. App., 102 So.2d 317; De Latour v. Lala, 15 La.App. 276, 131 So. 211."
These comments are herein stated only for the purpose of showing justification for the requirement that the false financial statement must have been relied upon and why the burden of showing such reliance is placed upon the lender.
For the above and foregoing reasons, the judgment of the District Court is affirmed at appellant's costs.
Affirmed.