LEAR, Judge.
Petitioner sues on a promissory note dated March 23, 1965, in the amount of $1,124.-00 carrying interest and containing a provision for the payment of attorney’s fee in the event of default. Petitioner further alleges that the note was executed by Leo Lewis and Josephine Lewis, alleges that some $1,-124.00 remains due and owing on the note, and alleges the provisions of the note by attaching it to the petition. Though the note identifies itself by means of “Ne Varietur” endorsement, with an act of chattel mortgage, the recognition and enforcement of the provisions of the chattel mortgage were not prayed for.
Defendants filed what is tantamount to a general denial of all of the allegations of the petition, but then asserted the affirma-' tive defense of discharge in bankruptcy, alleging that Leo Lewis was granted a discharge in bankruptcy on September 1, 1965, and that Josephine Lewis was granted a discharge in bankruptcy on November 18th of that same year. Defendants attached their respective schedules, showing that petitioner was listed as a creditor holding security in said schedules, and filed certified copies of each of their discharges.
At the outset of the trial, plaintiff introduced into evidence a financial statement dated March 23, 1965, addressed to X-L Finance Company, Inc. This financial statement lists as the sole obligation of the prospective borrower the name United Credit as obligee, and the amount of the obligation as $2,000.00. This financial statement was signed by Josephine C. Lewis, but was not signed by Leo Lewis.
Inasmuch as Leo Lewis was personally discharged, and inasmuch as his discharge also carries with it the discharge of the community existing between Leo Lewis and Josephine Lewis, and since there can be no contention that he gave petitioner a false financial statement with intent to defraud, the only issue before the court is whether or not plaintiff could have judgment against Josephine Lewis for a separate indebtedness since she was a co-signer of the note.
Josephine Lewis testified that she had borrowed money from X-L Finance Company in 1963 and 1964, and that in 1965 she refinanced these loans and received only the sum of $300.00 though she and Leo Lewis signed the note for $1,124.00. She admitted her signature on the financial statement, but denied having written the words “United Credit” and the amount “$2,000.00”. She testified that she went into the office late on the day of the transaction and gave a list of her creditors to the individual with whom she was dealing. She further testified that, *892 because of her past dealings with petitioner, petitioner had a record of her other indebt-ednesses and that she knew all they would have to do is call the credit bureau to get a complete picture of her financial condition.
Mr. Donald Hebert testified that he was the manager of X-L Finance Company in Lafayette and that he was the individual employee who interviewed Josephine Lewis. He agreed that it was after five o’clock when she came into the office for additional money. Stating that being a rather new employee of the Lafayette office, he did not personally know Josephine Lewis and asked for the execution of the financial statement because he was not personally acquainted with her. He further testified that he relied upon the statement in making the loan and that he did not know it to be false until after he had seen the schedule of creditors listed in her bankruptcy proceeding, which clearly showed that there were many prior indebtednesses other than the one to United Credit. He did admit, however, that at the time of making the note sued upon he knew that she had an existing balance with his company. He explains his failure to make an additional check on her financial condition by stating that the credit bureau closed at five o’clock, giving him no opportunity to get in touch with them.
He admitted that he asked about her husband and was told that he was out in the car. He stated that Josephine left the office and got Leo, who came in and signed the papers. However, Leo Lewis did not sign the financial statement and Mr. Hebert did not testify that he questioned Leo Lewis in any manner about other indebtednesses.
The trial judge gave judgment for defendants and against the plaintiff, dismissing the suit.
The law seems to be clear that a false financial statement renders a discharge in bankruptcy inoperative only if the obligor made false representations with intent to defraud the obligee, and that the ob-ligee actually relied on such false representations in extending the credit. Beneficial Finance Co., Inc. v. Gardache, La. App., 164 So.2d 132.
The district court obviously considered one or all of these elements to be missing in the present case. Considering all of the testimony and documentary evidence presented, this court cannot disagree with that conclusion. See Earl Staehle Finance, Inc. v. Brooks, La.App., 144 So.2d 155, and United Credit Plan, Inc. v. Seminary, La.App., 162 So.2d 807.
For the foregoing reasons, the judgment of the district court is affirmed.