REID, Judge.
Plaintiff Consolidated Credit Corporation of Baton Rouge, Incorporated filed suit against two defendants, Lawrence J. Ma-therne and Carolyn Rita Matherne, husband and wife, in the sum of Five Hundred Thirty-seven and 13/100 ($537.13) Dollars, plus interest and attorneys’ fees and costs. The suit is a foreclosure Via Ordinaria on a chattel mortgage covering certain household furniture.
The defendants filed an answer denying all of the allegations in plaintiff’s petition and further answered alleging that the indebtedness was included in bankruptcy proceedings, which was filed on September 28th, 1966 entitled “In the Matter of Lawrence Jude Matherne and Carolyn Rita Traina Matherne, Bankrupt No. 66-259” in the District Court of the United States for the Eastern District of Louisiana and that said account shown under schedule A-2, Creditors Holding Securities, first meeting of the creditors held at 9:00 a. m. October 11, 1966.
Defendant later filed a Supplemental and Amending Answer in which he attached certified copies of Schedule A-2 in the said bankruptcy matter.
Plaintiff then filed a Supplemental and Amended Petition in which he alleged that the debt sued on was non-dischargeable in bankruptcy because, first, the defendants disposed of or wrongfully moved from this jurisdiction the movable property covered in the chattel mortgage and second, that the two defendants made false representations when, on August 29th, 1965, a day prior to the loan, they executed in their own handwriting a financial statement, which statement contained the clause that they had no other debts than the ones listed thereon and that the plaintiff relied upon and was misled by the false representations of the defendants and enclosed a copy of the statement and annexed it thereto and made it a part thereof.
The defendants then filed an Answer to the Amended and Supplemental Petition in which they denied that they had disposed of the movable property or wrongfully removed same from the jurisdiction of this court and further denied that it was their intention to misrepresent any facts regarding their financial status at the time the loan was made; that they listed all of the major debts which they had made prior to this loan; that if there were any debts omitted, they were small debts, and it was their understanding at the time that the plaintiff was mainly interested in the major debts and not the smaller debts which they owed, consequently they did not list all of the smaller debts and that the financial statement was made in good faith with no *428 intention on the part of the defendants to misrepresent the facts or defraud the plaintiff.
The Lower Court, after hearing the case on the merits, rendered a judgment in favor of the defendants and against the plaintiff dismissing plaintiff’s suit but recognizing plaintiff’s chattel mortgage on the property listed in plaintiff’s petition. From this judgment plaintiffs have prosecuted this appeal.
While plaintiffs denied the existence of the note and chattel mortgage in their original answer, there is no question but what they signed the note and the chattel mortgage and that there was a balance due of the amount prayed for on this note.
The financial statement was offered in evidence and shows a total indebtedness of some Eleven Thousand Five Hundred Ten and 53/100 ($11,510.53) Dollars. This financial statement shows that the defendants were indebted to the plaintiff in the sum of Four Hundred Twenty-seven and 95/100 ($427.95) Dollars; to Family Finance in the amount of Four Hundred Seventy-seven and 40/100 ($477.40) Dollars; Louisiana National Bank Seventy-two and 08/100 ($72.08) Dollars; GMAC Thirteen Hundred Seventy-five and no/100 ($1375.00) Dollars; Termplan Finance Seven Hundred Fifty-eight and 10/100 ($758.10) Dollars; Gulf Union Corporation Sixty Three Hundred and no/100 ($6300.-00) Dollars. This financial statement contains the clause “I owe no other debts than stated above”.
According to the schedule A-2 of the bankruptcy proceedings the defendants were indebted unto the plaintiff company in the amount of Five Hundred Thirty-seven and no/100 ($537.00) Dollars; Joy’s Furniture Company Three Hundred Five and 55/100 ($305.55) Dollars; Family Finance Corporation Five Hundred Twenty-five and no/100 ($525.00) Dollars; GMAC Twelve Hundred and no/100 ($1200.00) Dollars; Public Finance Corporation One Thousand and no/100 ($1000.00) Dollars; Termplan Financing Six Hundred Twelve and no/100 ($612.00) Dollars making a total of Four Thousand One Hundred Seventy-nine and 55/100 ($4179.55) Dollars. On Schedule A-3 “Creditors Whose Claims are Unsecured” there is listed claims total-ling Eight Hundred Sixty-eight and 36/100 ($868.36) Dollars.- .
The trial judge did not hand down written reasons nor dictate oral reasons into the record when he rendered the judgment for the defendant. This case is essentially one of fact. The Federal Bankruptcy Act Paragraph 17, sub. a(2), 11 U.S.C.A. Paragraph 35(a) (2) reads as follows:
“(a) A discharge in bankruptcy shall release a bankrupt from all his provable debts whether liable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * *
This Court has held in Feliciana Finance Company v. Bateman, La.App., 194 So.2d 781 that there are three essential elements required to show a false statement, namely, (1) the defendant made false representations; (2) these representations were made with the intent of defrauding the plaintiff; (3) plaintiff relied upon and was misled by the false representations. There is no question but what the financial statement was in fact not correct so the trial judge evidently relied on the proposition that the statement was made with the intent to defraud and that the plaintiff relied on or was misled by the false representations.
The defendant had had previous business dealings with the plaintiff and went to the plaintiff originally not to renew a loan but with the request that he be allowed to skip *429 a payment, that he wanted to take a vacation trip to California. Plaintiff suggested that the loan be “refinanced”. This was when the false financial statement was obtained. The plaintiff testified that the defendant received One Hundred Forty-two and 23/100 ($142.23) Dollars for the cash portion of the refinanced loan. The defendant’s witnesses also testified that a discount of Two Hundred Thirty-seven and 60/100 ($237.60) Dollars was charged on the refinancing loan.
The plaintiff’s witnesses testified that they had had no trouble with the defendants on the prior loan. It did not call for a credit report from either the Baton Rouge Credit Bureau or the Credit Bureau of the South of which plaintiff was a subscribing member. The plaintiff had reports from the credit bureau in their files which showed the Twelve and no/100 ($12.00) Dollars medical bill, the Thirty-three and no/100 ($33.00) Dollars medical bill, the Forty-five and no/100 ($45.00) Dollars medical bill and the Five Hundred Thirty-six and 33/100 ($536.33) Dollars furniture bill. The defendant claimed that all he listed on his financial statements were the obligations he owed the finance company. We are satisfied that the trial judge was convinced that the plaintiff did not rely on the financial statement but on the contrary relied on the previous transactions that they had had with the defendant and coupled with the fact that they were going to receive a substantial discount in the amount of Two Hundred Thirty-seven and 60/100 ($237.60) Dollars. With this finding of the Trial Court we are in accord.
It is interesting to note that Mr. Stark, the official of the plaintiff company, who processed this loan, testified that they had had previous dealings with the defendants, found them to be very truthful and honest and that they didn’t check with the Credit Bureau of the South or the Credit Bureau of Baton Rouge for these reasons. He had no suspicions that he was being misinformed.
The case of Excel Finance Treme, Incorporated v. Noel, La.App., 138 So.2d 654 is a decision of the Fourth Circuit Court of Appeals, which we find covers the situation in the instant case. In that case the manager testified that they had made loans to the defendant for a number of years and that the defendant had never been delinquent on any payment and that on the financial statement the defendant listed only one creditor. He did testify that he had filled out the financial statement himself with the exception of one creditor. He further testified that he was satisfied that Mr. Noel was a good risk and gave him the money. In this case our brothers of the Fourth Circuit held that the plaintiff failed to prove that it relied upon an incomplete financial statement in making the loan evidenced by the note or that the statement was given with fraudulent intent and therefore the plaintiff was' not entitled to recover on the theory that the statement was fraudulent and the obligation not dischargeable in bankruptcy.
This is the same situation we have in the instant case. The plaintiff asked the defendant to write out a financial statement but according to the defendant to list only the finance companies to whom he was indebted. Defendant’s record with the plaintiff had been good, they considered defendant a good risk and didn’t hesitate to make the loan.
We believe that the district judge took all these facts into consideration in rendering his decision and since it is mainly a question of fact, we cannot disagree with this conclusion of the local Court. See X-L Finance Company v. Lewis, La.App., 205 So.2d 890.
For these reasons we conclude that the judgment of the Lower Court is correct and is hereby affirmed at the cost of the appellant.
Affirmed.