MARCUS, Judge.
Plaintiff, Carville PHS Employees Federal Credit Union, filed suit against defendant, William Agile Jones, for the sum of $745.00, together with interest and attorneys’ fees, such sum allegedly representing the unpaid balance on Jones’ note held by plaintiff. The note in question is dated December 6, 1963 and is in the original sum of $813.00.
The defendant filed an answer denying all allegations in plaintiff’s petition and asserted the affirmative defense of discharge in bankruptcy which he alleged should relieve him from said indebtedness.
The trial court rendered judgment in favor of defendant, rejecting and dismissing plaintiff’s suit. From this adverse judgment of the court below plaintiff has appealed.
The record reveals that defendant had been employed at Carville Hospital by the United States Public Health Service since February 24, 1958. During this period he had made nine loans with plaintiff credit union, including the one herein sued upon which is dated December 6, 1963. It should be observed that the loan immediately prior to the present one was made on August 6th, 1963. The application for the present loan was for $813.00, of which $677.93 was to pay off the balance on the previous loan, and the remainder of $135.07 was given to defendant in cash for the alleged purpose of Christmas shopping. There was no security for the loan other than the signature of the defendant plus his share in the credit union which amounted to $63.-93. It should be further observed that the application indicated that the defendant’s salary was $188.68 net bi-weekly, and that his wife was employed at a salary of $260.-00 per month.
The application was taken by Mr. John Duffy, Treasurer-Manager of the credit union, who admitted that he did not usually take applications but did so on this occasion as the girl who normally performs this function was not present in the office on that day. The information supplied by the defendant was taken down on the application in the handwriting of Mr. Duffy. Defendant signed the front side of the application, but the space for the listing of his obligations was on the reverse side; however, above defendant’s signature reference was made to his statements on the reverse side. Mr. Duffy testified that while he could not recall his exact words after four years, it was his general policy to ask the applicant to list all creditors and he was certain that he had done so in this case. He further testified that defendant’s prior loan was current and up-to-date at the time of his application. •
Defendant listed only three debts on his application which totalled a' sum of $10,-700.00. This application was made on December 5, 1963. On March 13, 1964 defendant filed for bankruptcy at which time he listed an additional nine creditors for various and sundry amounts. The total amount of indebtedness listed on his schedules in the bankruptcy proceedings was $14,589.42. There is no dispute that all the debts listed on the schedules in the bankruptcy proceedings were owed by defendant at the time of his application for the loan herein sued upon.
The aforesaid application had to be approved by the credit committee which consisted of four members, three of whom testified at the trial. The fourth .member was on vacation and did not testify. The said loan was in fact approved on December 6, 1963 which was the day after the application had been made. The three members who testified stated generally that they would not have approved the loan in question had they known of defendant’s total indebtedness as revealed in his schedules in the'bankruptcy proceedings. However, it is significant to note certain of the testimony of Mr. John R. Sturdivant, one of the members of this committee. When asked on what basis had he approved the loan he answered: “Well, his application —his past record was reasonably satisfac *907 tory and, of course, we all know Mr. Jones, I know him, and we thought at the time it was a good, safe risk.” (Tr. 21) The same witness was asked the question: “Now do you really believe that at the time Mr. Jones renewed this debt that he was intending to defraud you?” (Tr. 23)
“A. No, I don’t think I could say that. I don’t think he would intentionally defraud us. I don’t think any of us would think that.” (Tr. 23)
Mr. Sturdivant further stated: “Well, I think that had he stayed at the hospital, he would have paid this.” (Tr. 24)
When Mr. Sturdivant was asked “And based on his previous credit rating and your knowledge of Mr. Jones, you don’t believe at the time he signed this note that he was trying to defraud you?” (Tr. 25) He answered “Definitely not.” (Tr. 25)
Defendant testified that he was retired because of disability shortly after the loan was made; however, it is not clear from the record as to whether this was prior to his filing bankruptcy. In any event, defendant contends that his filing of bankruptcy was due to his inability to meet his obligations resulting from his reduced income after his retirement. He further testified that he did not intend to defraud plaintiff, and that it was not his understanding that he was to list all his creditors.
At the trial of this matter, plaintiff offered evidence to show that defendant had obtained the loan through fraudulent representation. The trial judge permitted the introduction of such evidence over the objection of defendant, but in his reasons for judgment ruled that such evidence was not admissible on the grounds that plaintiff had not alleged such fraudulent representation by way of supplemental pleading after defendant had pleaded discharge in bankruptcy. The trial judge was in error in this conclusion as it is well settled that in a suit for money loaned, where defendant has pleaded a discharge in bankruptcy, evidence tendered to prove the loan was obtained through fraudulent representation was admissible without replication by plaintiff alleging such fraudulent representation. LSA-C.C.P. Article 852. Liberal Finance Gentilly, Inc. v. Brister, 152 So.2d 331 (La.App. 1st Cir. 1963); Beneficial Finance Company of Louisiana v. Lathrop, 207 So.2d 220 (La.App. 4th Cir. 1968).
The trial judge in his reasons for judgment conceded that his aforesaid ruling might be incorrect and further concluded that “the defendant was not guilty of false pretenses or material representations upon which the plaintiff relied when making the loan.” We concur with this latter conclusion.
The Federal Bankruptcy Act, Section 17, sub. a(2), 11 U.S.C.A. Section 35(a) (2) reads as follows:
“(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * *
Before this section of the Bankruptcy Act will be applicable, it is incumbent on plaintiff to show: (1) That the defendant made false representations; (2) that these representations were made with the intent of defrauding the plaintiff; (3) that the plaintiff relied upon and was misled by the false representations. Consolidated Credit Corp. of Baton Rouge v. Matherne, 217 So.2d 426 (La.App. 1st Cir. 1968); Beneficial Finance Company *908 of La. v. Brantley, 211 So.2d 782 (La.App.2nd Cir. 1968); X-L Finance Company v. Donaway, 195 So.2d 730 (La.App. 1st Cir. 1967).
Since defendant’s application listed only three creditors for a total sum of $10,700.00 whereas in truth and in fact he owed an additional nine creditors for a total indebtedness of $14,589.42, it might be concluded that plaintiff has proven the first requirement that the defendant made false representations. However, this evidence is weakened by the fact that the information was recorded in the handwriting of the person taking the application on the reverse side of the form. The usual practice of meeting the burden of proving false representation is to present a false financial statement written and signed in the handwriting of the defendant. This latter procedure eliminates the possibility of error or misunderstanding.
Even assuming that the representations made by defendant were false, we are not satisfied that they were made with the intent to defraud nor are we satisfied that plaintiff relied upon and was misled by the false pretenses or representations. Defendant had been employed at the hospital for some six years during which time he had made eight previous loans. They knew defendant and considered him a good credit risk. Additionally, they were only advancing him $135.07 for Christmas shopping while refinancing the balance on a previous loan which had just been made approximately four months before. Further, while the representations might have been considered false, it is questionable whether they were of such a material nature that under these circumstances plaintiff would not have nevertheless renewed the loan together with the small advance in cash. Accordingly, we are convinced, as was the trial court, that the plaintiff did not rely on the financial statement but, on the contrary, relied on the previous transactions that they had with the defendant together with the fact that he was a fellow employee and member of the plaintiff credit union who had a good employment record and who was considered to be a good credit risk.
For the foregoing reasons, we conclude that the judgment of the lower court is correct and is hereby affirmed at the cost of appellant.
Affirmed.