BOUTALL, Judge.
This is an action on a promissory note in which plaintiff successfully challenged the defense of a discharge in bankruptcy on behalf of the defendant on the basis that plaintiff had, in fact, relied on a false financial statement submitted to it in connection with a loan made by defendant. The trial court rendered judgment in favor of plaintiff for the full amount as prayed. From this adverse judgment, defendant has perfected this appeal.
Plaintiff, a finance company domiciled in the Parish of Orleans and doing business in Louisiana as All State Credit Plan Harahan, Inc., filed this suit against defendant, George I. Anderson, in the amount of $628.93, together with interest and attorney’s fees. This sum represented the unpaid balance on defendant’s note held by plaintiff. The note sued on is dated April 28, 1967, and is secured by a chattel mortgage note also executed by defendant on April 28, 1967, and duly recorded in the Parish of Jefferson.
Defendant, George I. Anderson, urged that plaintiff’s recovery on the note is barred by defendant’s discharge in bankruptcy, which was stipulated in the trial court.
An examination of the record reveals a series of stipulations entered into by counsel for both parties. The stipulations are that:
1. The note was signed by defendant.
2. The balance due on the note is predicated on whether or not the discharge in bankruptcy is valid.
3. If such a balance is due, it is in the amount of $628.93 with interest and attorney’s fees.
*808 4. The discharge in bankruptcy and the validity of certain copies of pleadings in bankruptcy schedules, A1-A5.
5. The financial statement in question “is authentic in that it is a financial statement” signed by defendant.
6. The court should recognize the collateral mortgage recorded in Jefferson Parish with an in rem right of action against the property in question, subject to any other collateral mortgage which is of no concern to this court.
7. The following obligations are listed in bankruptcy, but were not listed on the financial statement in question:
a. Herb Wagner Finance Co. $759.00
b. Crescent Credit Corp. 552.60
c. Besson Warner Ins. Agency 21.96
d. GEX 23.52
e. Rudolph Petry, CPA 175.00
f. John D. Anderson 950.00
$2482.08
8.There are three other debts listed in the bankruptcy schedules which were contracted for in April, 1967; however, counsel agree that there is some question as to whether they came about before or after the financial statement dated April 28, 1967:
a. Ochsner Clinic $108.05
b. Ochsner Hospital 5.55
c. Donald Cole 250.00
$363.60
A review of the above stipulations leads us to the conclusion that the financial statement listing only one $75.00 debt in addition to his house mortgage is materially false. Therefore, there are but two issues before the court: (1) Did defendant make false representations with the intent to defraud plaintiff? and (2) Did the plaintiff rely upon these false representations in making the loan in question?
After a reading of the trial court transcript, we are convinced that the following is a fair summation of the material facts and events which occurred in the consummation of this loan.
The only two witnesses called were plaintiff’s ex-manager, Arthur Ramos, and the defendant, George I. Anderson. The defendant and plaintiff’s manager at the time of the making of this loan had been social friends for some two or more years. They saw each other regularly, bowled on a regular basis and were well acquainted in general. The ex-manager, Arthur Ramos, testified that in social discourse defendant approached him with the possibility of making a loan at All State. Ramos recalled that he said “sure, okay,’ you know, because we were friends. In other words it wasn’t just like a customer who had just walked in and I [Ramos] would be more on guard, to be honest with you”. Under examination, Ramos was questioned as to whether he relaxed the rules of the company for his friend, the defendant. His response was that he did not per se relax the rules but “the atmosphere of doing business was much more relaxed in the sense that this wasn’t somebody that I saw that called up or came in and I gave them an application, and looked at it and never knew the person and decided from a set of rules”. Ramos further testified that he usually did not close smaller loans (which he considered the loan in question to be) but because of his friendship with defendant, he was sure that he handled this loan.
Plaintiff’s witness testified that in reference to the preliminaries necessary to making a loan, defendant’s credit application was most probably made by telephone and that these details were taken care of by one of the office girls whose initials appear thereon. He could not recall if he compared the credit application and the financial statement nor if he relied upon *809 this financial statement in approving the loan, the inference throughout his testimony being that he did not. He also pointed out that in the general course of any transaction, the company used a formula that included several factors in approving or disapproving a loan which at one time did not include the financial statement. It was this witness’ belief that the defendant had dealt honestly with him. In his testimony under cross-examination, he testified that he was aware that the defendant had other outstanding debts not listed on this statement. Further, he admits that he knew plaintiff had a business and no such business obligations were listed.
The plaintiff’s ex-manager further testified that there was a procedure involved in making a loan in which a credit check, job and residence verification was first made and if it was decided that the loan would be made, the customer was called in, made to fill out a financial statement and received the money immediately.
As this court has stated on numerous occasions, we are not unaware of the possibility that a financial statement may be obtained without any serious intent to rely thereon but merely for the purpose of contesting a possible subsequent discharge in bankruptcy. Midland Discount Company v. Robichaux, 184 So.2d 93 (La.App. 4th Cir. 1966); Cash Finance Service, Inc. v. Haisch, 173 So.2d 851 (La.App. 4th Cir. 1965); Excel Finance Treme, Inc. v. Noel, 138 So.2d 654 (La.App. 4th Cir. 1962).
We believe that a proper interpretation of the testimony of plaintiff’s only witness, its ex-manager, is that: (1) he did not rely on defendant’s financial statement; (2) defendant was honest in his dealings with plaintiff and plaintiff’s witness felt that there was no intent to defraud plaintiff; (3) the loan was made because of Ramos’ friendship with and knowledge of defendant’s personal and business affairs, these elements being the primary consideration in determining that Anderson was a good risk; (4) in support of (3) above, Ramos believed that defendant had a previous loan with plaintiff which had been paid; and (5) no effort was made to compare the credit application with the financial statement or verify the latter.
At this point cognizance should be taken of plaintiff’s position that his own witness was in fact hostile, having left plaintiff’s employ, at best by mutual agreement, and that it was necessary for plaintiff to subpoena this person. Counsel submits that the trial judge took this witness’ “equivocating” testimony into consideration in reaching his conclusion. If this be the case, and thus, that little or no credence was given to this testimony, we are left with only the aforementioned stipulations and the uncontradicted testimony of defendant which is to the following effect.
Defendant testified that he telephoned plaintiff’s manager concerning this loan and was led to believe that all he had to do was to come to the office and the loan was his. Under examination, he testified that the reason for not making a full disclosure was twofold, in that: (1) he had a prior loan with All State and did not think it necessary to list all his obligations ; and (2) regardless of what he listed on the statement, he was going to receive the loan anyway. Defendant’s position is that Ramos was aware of defendant’s outstanding debts because of their friendship and relied not on the financial statement but on his ability to pay the loan.
Counsel for plaintiff submits that the following pertinent provisions of Section 17 of the Bankruptcy Act, as amended in 1960, 11 U.S.C.A. § 35(a) (2) are applicable here:
“(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false rep *810 resentations, or for obtaining money or property on credit * * * in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to lie made or published in any manner whatsoever with intent to deceive * $ *»
It is well settled in the jurisprudence of this state,[1] even prior to the 1960 amendment, that before these pertinent provisions of Section 17 are applicable, it is incumbent upon the plaintiff to establish:
1. The defendant made false representations ;
2. Those representations were made with the intent of defrauding the plaintiff;
3. The plaintiff relied upon and was misled by the false representations.
Conceding that there was not full disclosure for reasons aforementioned, consideration is now directed to the second and third requirements outlined above.
Plaintiff submits that the false representations plus its reliance thereon is sufficient to shift the burden to the defendant to show that the same was not given for the purpose of deception. Numerous cases are cited to the court which we believe to be distinguishable from the instant case. In the case at bar, plaintiff’s witness’ testimony is certainly to the effect that the defendant acted honestly toward him and that the false representations were not made to defraud nor were they relied upon. Therefore plaintiff’s own witness negates the second and third requirements. In this situation the trial judge was in error if he allowed the burden of proof to be shifted to the defendant. The plaintiff has fallen far short of proving that the financial statement was given with fraudulent intent which plaintiff concedes is its burden of proof. Whether the plaintiff has proven an intent to deceive or a reliance upon a false financial statement is a question of fact. If the trial court was unconvinced by plaintiff’s witness, then the only testimony he had left to consider was defendant’s. In the face of the then uncontradicted testimony of the defendant, the trier of fact’s evaluation is manifestly erroneous.
We do not disagree with the overwhelming jurisprudence that the trial judge’s finding of fact will not be reversed unless manifestly erroneous. However, there is an even more prevailing view that must be given our primary concern and that is that justice must be done. The evidence in this case is contrary to the trial court’s findings and for the reasons set forth hereinabove the judgment of the trial court is erroneous. It is now ordered that the judgment of the lower court is reversed and rendered in favor of defendant, dismissing plaintiff’s suit. Plaintiff-appellee to pay all court costs.
Reversed and rendered.

. C.H.F. Finance Co. v. Jochum, 241 La. 155, 127 So.2d 534 (1961); Sales Purchase Corporation v. Barnes, 228 So.2d 155 (XM.App.2nd Cir. 1969), writ refused Feb. 6, 1970; Beneficial Finance Company v. Cote, 216 So.2d 163 (La.App. 2nd Cir. 1968); Feliciana Finance Company v. Bateman, 194 So.2d 781 (La.App. 1st Cir. 1967); Midland Discount Company v. Robichaux, 184 So.2d 93 (La.App.4th Cir. 1966); Cash Finance Service, Inc. v. Haisch, 173 So.2d 851 (La.App.4th Cir. 1965); Friendly Finance Discount Corporation v. Hayden, 171 So. 2d 717 (La.App.2nd Cir. 1965), writ refused April 15, 1965, Excel Finance Mid City, Inc. v. Meilleur, 137 So.2d 503 (La.App.4th Cir. 1962); Excel Finance Treme, Inc. v. Noel, 138 So.2d 654 (La.App.4th Cir. 1962).