SAMET v. FARMERS' & MERCHANTS' NAT. BANK OF BALTIMORE.

(Circuit Court of Appeals, Fourth Circuit. December 12, 1917.)

No. 1541.

1. BANKRUPTCY ☜407(1)—DISCHARGE—"OBTAINING PROPERTY ON CREDIT UPON FALSE STATEMENT."

The securing by a bankrupt of the renewal of matured notes to a bank by means of a "materially false statement in writing" is the obtaining of property on credit by means of such statement, which deprives him of the right to a discharge under Bankruptcy Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550, as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (Comp. St. 1916, § 9598).

2. PROPERTY ☜2—SUBJECTS OF.

"Property" is a term of very broad signification, embracing everything that has exchangeable value or goes to make up a man's wealth,

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

every interest or estate which the law regards of sufficient value for judicial recognition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore, in bankruptcy; John C. Rose, Judge.

In the matter of August Samet, doing business as A. Samet & Co., bankrupt. From an order denying him a discharge on objections by the Farmers' & Merchants' National Bank of Baltimore, the bankrupt appeals. Affirmed.

For opinion below, see 243 Fed. 203.

Bernhard Cline, of Baltimore, Md., for appellant.

Edward Duffy, of Baltimore, Md., for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and CONNOR, District Judge.

WOODS, Circuit Judge. [1] August Samet, who was adjudicated a bankrupt on March 14, 1916, appeals from a decree refusing him a discharge on the objection of the Farmers' & Merchants' National Bank, one of his creditors. The objection was founded on section 14b (3), which provides against the discharge of the bankrupt if he "has obtained money or property on credit upon a materially false statement in writing made by him to any person or his representative for the purpose of obtaining credit from such person." The evidence that a statement known to be false was made by Samet to the bank was conclusive. The serious question is whether upon the statement he obtained "money or property on credit."

From time to time the bank had discounted Samet's notes. On February 26, 1915, the aggregate indebtedness to the bank represented by notes was $4,400. On that day Samet made a written statement to the bank as a basis of credit showing on January 15, 1915, a stock of goods of the value of $10,993.92, and good accounts due to the amount of $9,871.08. The evidence showed clearly that the bankrupt could not have failed to know that neither the goods nor the accounts were worth more than half of the valuation stated. On the faith of the statement the bank on February 26, 1915, and on subsequent days, allowed Samet to give new notes in the place of the old as they matured, crediting him with the amount of the new notes less the discount and taking his check for the old notes. The checks given in payment exceeded the new notes; so that at the date of the bankruptcy Samet owed $3,600, less by $800 than on the day he made the statement. At various times, however, when these transactions took place, there was a balance to the credit of Samet which the bank had a right to apply to the matured notes. Thus it appears that the specific thing which Samet obtained from the bank at the maturity of each note by means of his false statement was a note already due, by substituting for it a new note due at a future time.

If, when Samet took up the old note by giving his check for it, and then rediscounted the new note to provide for the payment of the check, the intention was to pay and not renew the old note, evidently that

would be a transaction in which Samet obtained money for the new note by the false representation after payment of the old. If the intention was that the new note should operate as a mere renewal, and not as payment of the debt, that would be a transaction in which, by means of his false statement, he obtained from the bank at the maturity of each note the note already due by substituting for it a new note payable at a future time. This would be obtaining property by false representations.

[2] A note is property because of the value of the contract which it represents. The transfer of a note four months before bankruptcy is a preference under section 67c of the statute. Property is a term of very broad signification, embracing everything that has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition. So the business world understands it, and so the courts should regard it, without drawing technical distinctions, in the application of the bankruptcy statute. In construing the words "transfer of property" under section 67e, the Supreme Court says in Pirie v. Chicago, etc., Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171:

"It seems necessarily to mean that a transfer of property includes the giving or conveying anything of value—anything which has a debt-paying or debt-securing power."

It is true that when a note is surrendered at maturity, and a new note taken merely as a renewal, the debt is not paid, nevertheless the old note and the renewal are two different pieces of property because they represent two different contracts. One represents a contract with the valuable quality of the right of immediate enforcement—the other represents a contract without that right. Regarding the new note as a renewal, and not payment of the debt, when by the false statement Samet obtained from the bank the note immediately enforceable against him, he "obtained property"; when he obtained it on promise to pay in the future, he "obtained property on credit"; and when he did this on the strength of a "materially false statement in writing," he forfeited under section 14b (3) his right to a discharge.

In this case the contracts represented by the notes which Samet obtained by the false representation had the additional quality of value that the bank could have applied to them the balances appearing on Samet's deposit account when they fell due. For the reasons stated we think the view on the subject expressed by the District Judge in this case and in the case of In re Waite (D. C.) 223 Fed. 853, and by Judge Chatfield in the case of In re Wylly (D. C.) 210 Fed. 954, is correct.

Affirmed.