## MORTON v. SNIDER.

Circuit Court of Appeals, Eighth Circuit.
June 7, 1927.

No. 7616.

Bankruptcy ⚖️407(6)—Renewal of notes obtained by bankrupt by false financial statement held ground for denial of discharge, even before amendment of Bankruptcy Act (Bankruptcy Act, § 14b (3), as amended May 27, 1926 [44 Stat. 662]).

Bankrupt's making of false financial statement, whereby he obtained renewal of notes then due, held to warrant denial of discharge, under Bankruptcy Act, § 14b (3), being Comp. St. § 9598, as it existed prior to amendments of May 27, 1926 (44 Stat. 662), specifically providing for denial of discharge in such case.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

In the matter of the bankruptcy of Edwin E. Snider. From an order dismissing specification of objection to discharge, and granting discharge, Charles L. Morton, objecting creditor, appeals. Judgment reversed, and cause remanded, with directions.

T. E. Diamond, of Sheldon, Iowa, for appellant.

Before SANBORN and BOOTH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge. Edwin E. Snider was adjudicated a bankrupt in the Northern district of Iowa, on the 9th day of October, 1925. Charles L. Morton, cashier of the Bank of Ocheyedan, a creditor, filed specification of objection to the bankrupt's discharge, based upon section 14b (3) of the Bankruptcy Act (Comp. St. § 9598). From an order of the District Court, dismissing the specification of objection and granting the discharge, the creditor prosecutes this appeal.

I. The Bank of Ocheyedan was a private banking institution owned by James Porter of Minneapolis, Minn., and was conducted by Charles Morton, the objecting creditor, as cashier, and by Wm. E. Dennison, as vice president, acting as agents of the owner. The bankrupt owed to the Bank of Ocheyedan

notes aggregating $4,276. Of these, five notes aggregated $3,386, and were payable to the objecting creditor as cashier. All of the five notes were unsecured, and all were past due on the 18th day of February, 1921. The bankrupt called at the Bank of Ocheyedan on that day, and Mr. Dennison took up with him the matter of the renewal of his indebtedness. For this purpose the bankrupt signed a financial statement. A printed form was used in making this statement. The bankrupt orally communicated to Mr. Dennison the information relating to his financial situation, and Mr. Dennison incorporated the same in the statement. All the handwriting appearing in the document was that of Mr. Dennison, with the exception of the signature, which was that of the bankrupt.

Under the head of "Owing Other Banks" there was inserted "$270." The bankrupt informed Mr. Dennison that he owed this amount to a bank at Hartley, Iowa. The bankrupt did not mention an indebtedness to the First National Bank of Melvin, Iowa, to the amount of $2,000. Under the head of "All Other Debts" there was inserted "$1,340." The bankrupt did not include two notes, aggregating $2,000, outstanding in favor of the Globe Fire Insurance Company, of Sioux City, Iowa.

In March, 1920, the bankrupt first became indebted to the First National Bank of Melvin, Iowa, in the amount of $2,000, represented by a promissory note. This note was renewed on September 27, 1920, and was still outstanding and unpaid on February 18, 1921. About December, 1917, the bankrupt subscribed for 10 shares of the capital stock of the Globe Fire Insurance Company, of Sioux City, Iowa, giving therefor his two promissory notes, in the amount of $500 and $1,500, respectively. These notes were outstanding and unpaid at the time of this transaction with the bank.

Relying upon this financial statement, Mr. Dennison stamped the above-mentioned five notes "Paid by renewal," and delivered the same to the bankrupt, accepting in lieu thereof three new notes, aggregating $3,250. There was at this time a small cash transaction, but as the evidence concerning it is not clear it may be overlooked. These new notes were subsequently renewed from time to time, and after bankruptcy were filed as unsecured claims.

II. This case must be determined by the provisions of the Bankruptcy Act prior to the amendments of May 27, 1926. 44 Stat. 662. The statute then provided that the court shall, upon the hearing, discharge the applicant

from bankruptcy unless he has (section 14b [3], Comp. Stat. § 9598) "obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person." As a result of the amendment this section of the statute was changed, and now reads as follows: "Obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing, or causing to be made or published, in any manner whatsoever, a materially false statement in writing."

The evidence clearly indicated' that the debtor made a materially false statement in writing for the purpose of obtaining credit from the bank, and that the creditor, ignorant of the falsity of the statement, relied upon the statement, in renewing the loans. The sole question then is whether the bankrupt obtained property on credit as a result of this transaction.

As the statute now reads, the obtaining of an extension or renewal of past-due obligations by the means mentioned in the statute would be sufficient ground for refusing to discharge the bankrupt. The trial court was of the opinion that the fact that Congress made this amendment indicated that prior to the amendment the obtaining of a renewal of notes by false statement in writing did not constitute a valid objection to the discharge of the bankrupt. The question had been before the courts prior to the amendment and their rulings were uniform to the effect that the obtaining of a renewal note due in the future and the canceling of a past-due note was the obtaining of property within the meaning of the act. At the time the statement was made in this case the bank had five notes that were due, and it could have immediately proceeded to collect the same. When the renewal notes were executed, the bank surrendered this privilege and accepted obligations that matured in the future. This the courts seem to have uniformly held was the obtaining of property. In Samet v. Farmers' & Merchants' Bank (C. C. A.) 247 F. 669, 40 Am. Bankr. Rep. 450, the court said:

"It is true that when a note is surrendered at maturity, and a new note taken merely as a renewal, the debt is not paid, nevertheless the old note and the renewal are two different pieces of property because they represent two different contracts. One represents a contract with a valuable quality of the right of immediate enforcement—the other represents a contract without that right. Regarding the new note as a renewal, and not payment of the debt, when by the false statement Samet

obtained from the bank the note immediately enforceable against him, he 'obtained property'; when he obtained it on promise to pay in the future, he 'obtained property on credit'; and when he did this on the strength of a 'materially false statement in writing,' he forfeited under section 14b (3) his right to a discharge."

The reported decisions are, without exception, to the same effect. In re Wylly (D. C. N. Y.) 210 F. 954; In re Waite (D. C. Md.) 223 F. 853; In re Samet (D. C. Md.) 243 F. 203; In re Weitzman (D. C. Tex.) 11 F.(2d) 897; In re Wolff (D. C. Minn.) 11 F.(2d) 293. Collier on Bankruptcy (13th Ed., 1927 Sup.) p. 551, states that "the amendatory act of 1926 makes statutory the court holdings that the obtaining of an extension or renewal of credit by a false financial statement an objection to a discharge."

To hold otherwise, the judgment of this court would find no basis in the adjudicated cases on the subject, and would give the act an interpretation of which it is no longer susceptible by reason of the amendment of 1926.

The judgment is reversed, and the cause remanded, with directions to enter an order sustaining the specification of objection and denying the application of the bankrupt for a discharge.