127 So.2d 534

C H F FINANCE COMPANY, Inc.

v.

Ruby LEA, Wife of/and Henry JOCHUM.

No. 45331.

Feb. 15, 1961.

Rehearing Denied March 20, 1961.

John M. Holahan, New Orleans, for defendants.

Philip H. Giuffre, George W. Weber, New Orleans, for respondent.

HAMLIN, Justice.

The question posed for our determination is whether a certain promissory note made by relator, Henry Jochum, constituted a debt not affected by a discharge in bankruptcy.

Under a series of loan transactions commencing in 1943 or 1944, defendants were occasional debtors of plaintiff. On November 29, 1955, they executed a $300 note (type 3½–2½%) with plaintiff, a balance of $199.17 being in arrears on November 5, 1956. On the latter date, defendants executed a new note for $300; their note of November 29, 1955 was cancelled and returned to them, and they received net cash of $100.83. The company card evidencing defendants' payments on their 1955 note bore the following notation: "New Loan, #7465; Renewed, 11–5–56; Amount, $300.-00; Prev. Bal., $199.17; Net, $100.83." In executing the 1956 note, defendants signed a financial statement, wherein they recited that they owed George Glover $150 and were indebted to C H F Finance Company, Inc.; they further stated, "We have no other debts."

On June 23, 1958, plaintiff filed suit on the note of November 5, 1956, alleging "that

the said note stipulates that on failure to pay any installment, the whole of said note shall at once become due and exigible, together with 25% attorney's fee on principal and interest; that the defendants have paid $65.77 on account of said note, and interest through September 5, 1957, leaving a principal balance past due and unpaid of $234.-23 together with interest and attorney's fee as aforesaid." They further alleged that amicable demand was made on defendants without avail. Plaintiff prayed for judgment against the defendants in the sum of $234.23, together with interest and attorney's fee.

Defendants in answer specially pleaded their discharge in bankruptcy as to the debt sought to be recovered by plaintiff, averring that plaintiff was listed as a creditor, had received notices of meetings of creditors, and had had opportunity to oppose defendants' discharge, but had neglected to do so. Alternatively, defendants averred that if the debt were not one dischargeable in bankruptcy recovery should be limited to the actual cash received, as the transaction constituted a refinanced obligation. Defendants further prayed that no recovery should be had for interest and attorney's fees, averring that they were contractual obligations barred by the discharge in bankruptcy.

The trial court rendered judgment in favor of plaintiff and against defendants,

for the full sum of $234.23, with 3½% per month interest on any unpaid principal balance not in excess of $150, and 2½% per month interest on that part of the unpaid principal balance in excess of $150 from September 5, 1957 to July 7, 1959, and 8% per annum interest thereafter until paid, plus 25% attorney's fees on principal and interest, and all costs.

The Court of Appeal for the Parish of Orleans [1] (121 So.2d 373) found that at the time Henry Jochum made the financial statement, supra, he was indebted to about eight other creditors for substantial amounts; in the opinion of the Court, the statement was false and knowingly made. However, it found that Mrs. Jochum did not know of the false statement made by her husband, that she did not accompany him to the finance company, and that she only signed the note at her home upon her husband's presenting it to her for signature. The Court further found that the record was devoid of any evidence showing that plaintiff possessed a license permitting it to charge the rates of interest claimed.

The Court of Appeal dismissed plaintiff's suit against Mrs. Jochum; it amended the judgment against Henry Jochum, so as to provide that it should bear interest at the rate of eight percent per annum from September 5, 1957, until paid.

1. Since rendering the judgment on June 6, 1960, the Court of Appeal for the

Parish of Orleans has become the Court of Appeal, Fourth Circuit.

We granted certiorari (Art. VII, Sec. 11, La. Constitution of 1921) upon the application of Henry Jochum. He alleges that on the merits of the matter as a whole, it would appear that the plaintiff has not borne the burden of proving the intention of defendant to defraud it, nor has it shown that his statements were relied upon to make the note in question.

When this matter was decided by the Court of Appeal, it was provided in Section 17 of the Bankruptcy Act (11 U.S.C.A. § 35) that "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, * *"[2] In De Latour v. Lala, 15 La.App. 276, 131 So. 211, 212, the Court analyzed the foregoing language and stated that before Section 17 (11 U.S.C.A. § 35) would be applicable, "the plaintiff must show: (1) That defendant made false representations; (2) that these representations were made with the intention of defrauding the plaintiff, and (3) that the plaintiff relied upon and was misled by the false pretenses or representations."

The record herein contains a stipulation, made in the trial court by counsel for defendants, to the effect that defendants filed bankruptcy proceedings in the United States District Court for the Eastern District of Louisiana, on October 7, 1957, and that the debt herein involved was listed in the schedules. Counsel for plaintiff stipulated that the defendants were discharged prior to the filing of the instant suit.

Henry Jochum affirmatively testified that at the time he executed the note of November 5, 1956, he had creditors other than those listed in the financial statement he signed; he said that he could only think of two creditors at the time. A reading of the entire testimony of record convinces us that the following statement of the Court of Appeal is correct:

> "We do not hesitate for a moment to comment that Jochum induced plaintiff by means of the false financial statement to part with the cash amount and the old note, * * *"

▮ In the case of Guedry Finance Company v. McCubbin, 120 So.2d 298 (certiorari denied)[3] the facts of which are al-

---

**2.** Subdivision (2) of 11 U.S.C.A. § 35 was amended July 12, 1960, (Pub.L. 86–621, Sec. 2, 74 Stat. 409) to read: "(2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, * * *"

**3.** In refusing certiorari in the case of Guedry Finance Company v. McCubbin, No. 45,290 of the Docket of the Su-

most identical with those in the instant case, the Court of Appeal found that plaintiff did not show that it had sustained any loss financial or otherwise as a result of the false representations alleged. The Court stated that it was incumbent on plaintiff to make such a showing; otherwise the discharge in bankruptcy would stand as a bar to a recovery on the claim. In the instant matter, we find that plaintiff has adequately borne its burden of proof by showing that it suffered a financial loss and was misled by the representations of the defendant Henry Jochum.[4]

Having decided that Henry Jochum made false representations to plaintiff with the intention of receiving cash and refinancing his note and that plaintiff was misled by such representations, we must determine whether plaintiff is entitled only to the cash received by the defendant Henry Jochum when he executed the note of November 5, 1956, or whether plaintiff should recover the face amount of the note less any payments made.

Plaintiff contends that the old promissory note, which was cancelled and returned to Jochum on execution of the new note, together with $100 cash, was property within the statutory contemplation of Section 17, sub. a(2), 11 U.S.C.A. § 35, of the Bankruptcy Act.

Relator, Henry Jochum, argues that the old promissory note, when received by him, was not property; as authority, he relies on statements made in 6 Am.Jur., Sec. 782, p. 1008, and 8 C.J.S. Bankruptcy § 573, p. 1513 et seq., which set forth that the extension or renewal of an existing note is not the equivalent of "property" within the meaning of the exception from discharge of a liability for obtaining money or property by false pretenses or false representations.

We have read the authorities cited by relator and find that the statements therein made relate to specific situations; they do not set forth a hard and fast rule which applies to the facts of every claim against a bankrupt for obtaining money or property on credit through false representations or false pretenses as to his financial condition at the time the money or property is obtained.

It is a recognized rule of statutory construction that the act as a whole ought to be interpreted so that no clause, sentence, or word, shall be superfluous, or meaningless, if that result can be avoided. Hibernia National Bank in New Orleans

---

preme Court of Louisiana, it was stated, "Writ refused. On the facts found by the Court of Appeal, we find no error of law."

4. "The burden of proof is upon the creditor, who claims that his duly scheduled debt is excepted from the operation of the discharge in bankruptcy because of fraud. * * *" De Latour v. Lala, 15 La.App. 276, 131 So. 211, 212.

v. Louisiana Tax Commission, 195 La. 43, 196 So. 15; Dore v. Tugwell, 228 La. 807, 84 So.2d 199; Bartley, Inc. v. Town of Westlake, 237 La. 413, 111 So.2d 328. In interpreting a part or section of an act in dispute, the part or section should be interpreted with the rest of the act. Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So. 2d 303. A familiar canon of construction requires that the meaning of a statute is to be looked for in all its sections taken together and in that posture related to the end in view. United States v. Vivian, 7 Cir., 224 F.2d 53; 350 U.S. 953, 76 S.Ct. 340, 100 L.Ed. 830; Smither & Co., Inc. v. Coles, 100 U.S.App.D.C. 68, 242 F.2d 220; 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429.

Section 14 of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(3), recites:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition."

In Gilbert's Collier on Bankruptcy, Section 14, Discharges When Granted, VII. False Statement to Secure, Renew or Extend Credit, Paragraph 484, Distinguished from Section 17, p. 319, it is stated:

"This subsection and section 17, which provides that a liability for obtaining property by false pretenses will not be discharged, are not mutually exclusive, or even pari materia. Section 17 is for the benefit of the creditor whose claim is covered thereby, and to be invoked by him only. Section 14b is addressed to the bankruptcy court only, and is not for the benefit of any particular creditor or class of creditors, and by its express terms may be invoked, on an application for discharge, by the trustee or other party in interest to defeat the discharge. The right to object to a discharge because of a false statement to secure credit, is not a personal right and is not subject to waiver by the defrauded creditor."

Under the above authorities, we find no objection to ascertaining the meaning of the term "property" from both Section 14 and Section 17 of the Bankruptcy Act. The fact that plaintiff, a creditor, asserts that its claim is protected by Section 17 of the Act does not preclude its reliance on interpretations of "property" under Section 14. "In the absence of clear indication of congressional intent to the contrary, the identical language in sections 17 and 14 would receive the same construction." Personal Finance Co. of New Jersey v. Bruns, 16 N.J.Super. 133, 84 A.2d 32, 33.

In the case of Samet v. Farmers' & Merchants' National Bank of Baltimore, 4 Cir., 247 F. 669, 670, the Court had under consideration the term "property" as set forth in Section 14, sub. b of the Bankruptcy Act. We believe that the following statement from the opinion is applicable to Section 17 of the Act:

"If, when Samet took up the old note by giving his check for it, and then rediscounted the new note to provide for the payment of the check, the intention was to pay and not renew the old note, evidently that would be a transaction in which Samet obtained money for the new note by the false representation after payment of the old. If the intention was that the new note should operate as a mere renewal, and not as payment of the debt, that would be a transaction in which, by means of his false statement, he obtained from the bank at the maturity of each note the note already due by substituting for it a new note payable at a future time. *This would be obtaining property by false representations.*

"A note is property because of the value of the contract which it represents. * * * Property is a term of very broad signification, embracing everything that has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial

recognition. So the business world understands it, and so the courts should regard it, without drawing technical distinctions, in the application of the bankruptcy statute.

\* \* \* \* \* \*

"It is true that when a note is surrendered at maturity, and a new note taken merely as a renewal, the debt is not paid, nevertheless the old note and the renewal are two different pieces of property because they represent two *different contracts.* One *represents a* contract with the valuable quality of the right of immediate enforcement— the other represents a contract without that right. Regarding the new *note as a renewal, and not payment* of the debt, when by the false statement Samet obtained from the bank the note immediately enforceable against him, he 'obtained property'; when *he obtained it on promise to pay* in the future, he 'obtained property on credit'; and when he did this on the strength of a 'materially false statement in writing,' he forfeited under section 14b(3) *his right to a discharge."* (Emphasis ours.) See, Annotation, 78 L.Ed. 179; In re Waite, D.C., 223 F. 853; Morton v. Snider, 8 Cir., 20 F.2d 469.

■ Although the decisions of other jurisdictions are not controlling on the Courts of Louisiana, if they determine an issue

practically identical with the one under consideration, they possess at least a persuasive effect and merit attention. See, Michiels v. Succession of Gladden, La.App., 180 So. 862; 190 La. 917, 183 So. 217.

The case of Personal Finance Company of New Jersey v. Bruns, 16 N.J.Super. 133, 84 A.2d 32, 33, involved a factual situation identical in substance with the instant matter. In deciding in favor of the plaintiff, the Court stated:

"We need not pursue consideration of the authorities which may be applicable to an ordinary renewal of an outstanding note. In the instant matter the note was not simply renewed; there was in substance, as well as form, a new transaction in which the defendant obtained not only the customary surrender of the old note and the extension of credit incident to the new, but also the further advance of $14 in cash and reduction of the monthly installment payments. This he did through the aid of a false and fraudulent financial statement and he came under a resulting liability in the full amount for obtaining property by false representations within the contemplation of section 17 of the Bankruptcy Act. * * * " [5]

The case of Public Loan Corporation v. Hood, Ohio Com.Pl., 125 N.E.2d 770, 775,

presents facts substantially the same as those in the instant matter; therein, the Court stated:

"The defendant, by his false financial statement, obtained the satisfaction and surrender of his old note, that is, the note which was in existence prior to the time of execution of the note in question. Under these circumstances it certainly cannot be argued that the defendants did not obtain 'property' by false representations within the meaning of the Bankruptcy Act.

"He, by such representations, obtained the discharge and surrender of a valid note, which was evidence of his obligation to repay a substantial sum of money to plaintiff. To hold here that plaintiff is restricted to recovering the sum of $100.00 would in effect declare that the note, the discharge and surrender of which the defendant so obtained, was not property and not of any value. Such a holding would be contrary to law. See In re Weitzman, D.C., 11 F.2d 897, and cases therein cited."

The case of Leeds, Inc. v. Love, 104 Ohio App. 145, 145 N.E.2d 154, 156, contains the following persuasive language:

"Is obtaining the cancellation of an overdue note and an extension of credit in the form of a new note, payable at

5. The Superior Court of New Jersey reversed the judgment of the trial court which had allowed plaintiff only the cash advance.

a future date, as a part of a transaction whereby additional credit was obtained for merchandise the obtaining of property for the entire debt represented by the new note, or must the effect of the deceit be limited to the tangible property obtained at the time?

"In the annotation to the case of Time Finance Co. v. Nelson, 312 Ky. 255, 227 S.W.2d 189, 17 A.L.R.2d 1205, at page 1210, it is said:

" 'It may also be noted in passing that a bankrupt's fraud which results in the renewal of an existing loan and the lending of additional money affects, for purposes of Sec. 35, the entire sum loaned and not merely the increase of the original loan; in such a case, it has been said that the transaction in which the fraudulent statement is made extinguishes the bankrupt's original debt and creates a new obligation of a greater amount, despite the fact that the bankrupt, at the time of the false representations, receives in cash only the difference between the original loan and the total amount of money loaned.'

\*    \*    \*    \*    \*    \*

"So we hold that the entire amount of the new note was a non-dischargeable debt."

■ A review of all the authorities cited and quoted, supra, impels us to conclude that the defendant Henry Jochum obtained

property by false representations within the meaning of the Bankruptcy Act when he secured the cancellation and receipt of his promissory note of November 29, 1955. Plaintiff is therefore entitled to recover not only the amount of the cash advanced to Jochum but also the face value of the promissory note of November 5, 1956, less any payments made thereon.

The case of Personal Finance Co. of Shreveport, Inc. v. Murphy, La.App., 53 So.2d 421, cited as authority for relator's contentions, is not factually the same as the instant matter. In that case, an unmatured note was surrendered to the defendant when he executed a new note for the unpaid balance of the old note and cash received by him. The Court of Appeal stated therein that it failed to find that any installments were in default at the time of the execution of the second note; under such conditions, the Court held that plaintiff was only entitled to recover the cash defendant received when he executed the new note. See, Personal Finance Co. v. Moore, 153. Me. 122, 135 A.2d 414

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is affirmed. All costs are to be paid by relator, Henry Jochum.

SUMMERS, J., concurs in the decree.

McCALEB, Justice (concurring).

I concur in the decree but, unlike the majority, I am unable to perceive any difference, factual or legal, between this case and Guedry Finance Company v. McCubbin, 120 So.2d 298, where the Court of Appeal, just two months prior to its decision herein, reached a contrary result. Indeed, this conflict of view by the same court was the main reason for granting a writ of review herein.

It is true, as pointed out in our majority opinion, that the Court of Appeal stated in the McCubbin case that the finance company was not defrauded and suffered no financial loss because, prior to his bankruptcy, the debtor repaid more ($79.99) on the new note than he actually received in cash ($32.61) when he obtained the surrender of his past-due 1956 renewal note, on which he owed a balance of $265.14, and replaced it with the new obligation for $300 " * * * in order to get some ready cash and bring his account up to date." However, this statement was purely gratuitous and had nothing whatever to do with the question presented for decision, i. e., whether the securing of a cancellation of a matured obligation, by means of a fraudulent financial statement on which extended credit is obtained, falls within the purview of Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35.

The McCubbin case is indistinguishable from this one and I think it behooved this Court to say so; to admit that we erred in denying a writ of certiorari on the ground that there was no error of law in that matter "On the facts found by the Court of Appeal, * * *". The finance company in the McCubbin case suffered a loss of almost $220, if the decision herein is correct, just like the plaintiff in this case has sustained a loss of $234.23, for which it is given judgment against defendant.