207 So.2d 220 (1968)
BENEFICIAL FINANCE COMPANY OF LOUISIANA
v.
James H. LATHROP.
No. 2906.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1968.
Rehearing Denied March 4, 1968.
Writ Refused April 11, 1968.
Lenfant & Villere, Howard W. Lenfant, New Orleans, for plaintiff-appellee.
Solomon & Rudman, Laurence D. Rudman, New Orleans, for defendant-appellant.
Before HALL, JOHNSON and TUCKER, JJ.
JOHNSON, Judge.
The plaintiff sued the defendant on a promissory note. The trial court rendered judgment in favor of plaintiff. The defendant appealed.
On March 10, 1966, the defendant owed the plaintiff $1,144.44 on a note on which defendant was making monthly payments. The note originally was for $2,088.00. On that date defendant called Mr. Charles Umberger, plaintiff's manager, on the telephone to find out the possibility of making a new note for $2,088.00 to refinance his present loan and, if so, how much additional cash he could get. The manager's response was that he "would have to check it out, and he would get back to him and let him know." Later that day the manager did call the defendant to tell him that he thought it could be worked out and requested the defendant to come in after defendant left work that afternoon. At about 3:30 p. m., the defendant went to plaintiff's office. Mr. Umberger came in with the various forms to be filled out. Mr. Umberger asked some questions and the papers were made up and signed. Defendant does not remember exactly in what order he signed the papers, the note, the chattel mortgage and the financial statement, but as to the financial statement defendant testified that he distinctly remembers stating to Mr. Umberger that "there was no way I could pull the figures out of the top of my head, concerning all of my indebtedness, but that I would put down the ones which I was currently making monthly payments on and ones which I could remember. * * * So Mr. Umberger, at that time, told me that this was perfectly all right, to put down as much as I could remember, and that is what I did."
*221 Mr. Umberger testified that definitely no such conversation took place.
Mr. Umberger further testified that he has been employed by plaintiff for some 12 years and has been manager of this New Orleans office for 9 years; that he has final loan authority up to a certain limit and this application was for an amount larger than the limit of his final authority; that in such a case he made the investigation and gathered whatever information he could to enable him to evaluate the risk; that if he approved the loan himself he then would pass the information to his superior for confirmation and authority to make the loan; that if he, Umberger, did not approve the loan himself that was the end of it; that in this case during the day he made some check on defendant and when the defendant came in that afternoon the first paper to be filled out was the financial statement; that he took the statement and looked at it (the plaintiff had made 5 or 6 previous satisfactory loans to this defendant); that he approved this loan after looking at the financial statement and called his superior on the telephone to get authority to make it. He got that authority and the loan was made.
In answer to plaintiff's suit on this delinquent note, defendant pleaded the special defense that he didn't owe the debt because he had been discharged in bankruptcy. Under our system of pleading a special defense alleged in defendant's answer is considered as denied by plaintiff without any replication of the answer. Competent evidence was offered on the trial of this case on behalf of plaintiff and properly admitted over the objection of defendant's counsel to prove that defendant has not been relieved of liability for the payment of this note by going into bankruptcy. Plaintiff contends that under the provisions of Sec. 17 (11 U.S.C.A. § 35a), the defendant, in order to induce plaintiff to make the loan, made a false statement in writing respecting his financial condition with intent to deceive plaintiff; that plaintiff relied upon and was misled by the statement.
The following are the main parts of the financial statement which were filled in by defendant's hand:

*222 The plaintiff offered in evidence, and they are part of the record, the financial statement and defendant's Bankruptcy Schedule A, consisting of three pages on which are listed by typewriter 52 debts by name and amounts for the total sum of $61,666.91. After making this and two other loans on or about the same day, he filed his petition in bankruptcy in less than 30 days. The difference between the financial statement given plaintiff with his application for the loan and Schedule A filed with his petition in voluntary bankruptcy is overwhelming. If defendant made the statement to Mr. Umberger that he could not make a complete list of his debts and the amounts at a moments notice, we think he told the unadulterated truth. However, we are convinced that the complete absence of some reasonable effort to disclose at best a semblance of his bad financial condition was caused by defendant's knowledge that with such disclosure his loan definitely would not be approved. We cannot probe the inner processes of defendant's mind in order to determine intent. There is a trite truism that actions speak louder than words. Therefore, all the evidence here leads us to conclude that the intent was to deceive. Mr. Umberger testified that he relied on the statement and that if he had known about the number of debts and the amounts as listed on the Bankruptcy Schedule, he would not have approved the loan himself and in that case would not have requested authority of his superior to make it. Midland Discount Co. v. Robichaux, La.App., 184 So.2d 93; General Finance Loan Company, etc. v. Allen, La.App., 165 So.2d 20; Liberal Finance Corporation v. Holley, 157 So.2d 376, 379; Liberal Finance Gentilly, Inc. v. Brister, La.App., 152 So.2d 331, 334; Earl Staehle Finance, Inc. v. Brooks, La.App., 144 So.2d 155, 157; CHF Finance Company v. Jochum, 241 La. 155, 127 So.2d 534.
The following is quoted from the opinion in Seaboard Finance Corporation v. Stipelcovich, La.App., 176 So.2d 170 (172):
"However, when the plaintiff has shown that the defendant made false representations with the intention of defrauding the plaintiff and has obtained the credit as a result of plaintiff relying upon and being misled by those representations, the burden then shifts to the defendant to disprove an intent to defraud. Liberal Finance Corporation v. Holley, La.App., 157 So.2d 376; CHF Finance Company v. Corca, La.App., 152 So.2d 830; Earl Staehle Finance, Inc. v. Brooks, La.App., 144 So.2d 155; Morris Finance & Loan v. Dickerson, La.App., 57 So.2d 786."
The opinion in Seaboard Finance Corporation v. Stipelcovich, supra, further indicates that "it may not be necessary for plaintiff to prove an intent to defraud," citing Collier on Bankruptcy, 14th Ed., Vol. 1, Sec. 1440 and Third Nat. Bank v. Schatten, 6 Cir. 81 F.2d 538.
For these reasons, the judgment appealed from is affirmed. The defendant is to pay the costs.
Affirmed.