COLE, Judge.
Finance System of Baton Rouge, Inc., here seeks the partial reversal of a judgment rendered by the District Court in this action which is a suit on a promissory note in the amount of $844.80 and, in conjunction therewith, recognition of its chattel mortgage on certain items of household furniture.
In addition to a general denial filed in response to the petition, the defendant has also raised the affirmative defense of bankruptcy as the obligation represented by the note held by the plaintiff was among those seemingly discharged in Bankruptcy No. 69-533 on the docket of the United States District Court for the Eastern District of Louisiana captioned “In the Matter of Charley Andrew Terrell”.
By amended petition, plaintiff alleged that this particular debt is not discharge-able in bankruptcy because the defendant has concealed or disposed of the furniture listed on the mortgage and, further, that the defendant had executed a materially false financial statement which they relied upon to their detriment.
It is uncontradicted that on January 10, 1969, the defendant called Mr. Phillip F. Schilling, plaintiff’s manager, at his office *585 in Baton Rouge seeking an appointment to discuss with him the renewal of prior note indebtedness. Later in the day, Terrell appeared at the lender’s office and, at that time, signed the note and chattel mortgage now in question in the amount of $1,152.00 to be paid in thirty monthly installments of $38.40 each. Terrell received no additional money at that time.
Prior to the granting of this renewal, Mr. Schilling had the defendant sign a financial statement which, among other things, purported to list all of the debts which he owed at that time. Terrell paid installments in the amount of $307.20 before declaring bankruptcy on December 17, 1969, in the aforementioned proceeding. Schedules A-2 and A-3 of his petition therein list several obligations not enumerated on the financial statement supplied Mr. Schilling at the outset of this transaction. Plaintiff seeks relief from the allegedly fraudulent financial statement and because none of the security was apparently available for recovery.
At the trial, Mr. Schilling affirmatively indicated that he relied upon the financial statement taken from Terrell in arriving at a decision to renew the indebtedness. He related a past history of satisfactory business dealings with the borrower over a period of years until the weeks immediately preceding the renewal, during which Terrell had fallen two installments behind on each of the two notes with outstanding balances. In view of these circumstances, the defendant was in jeopardy of being sued on both notes and Mr. Schilling stated that he was ready to refer them to his attorney for collection.
When Terrell arrived on January 10th, Mr. Schilling already had complete background information on the defendant, such as his employment, his wife’s employment, his usual monthly income and other personal data. He had also obtained a report on the customer from the Lender’s Exchange, an informational association whose membership is comprised of various lending institutions in the Baton Rouge area. Terrell was then requested to disclose all of the debts that he owed, at which time he caused to be listed three debts and then he, himself, in apparent compliance with the requirements of the form printed the words “I owe no other debts stated above” across the bottom of the page and signed his name, all as verified by Terrell at the trial. While the record is not entirely clear, it appears that Mr. Schilling actually wrote all of the information on the financial statement leaving Terrell to print the aforesaid attestation and sign his name. It is obvious to this Court that the form was not personally filled in by the defendant and that the defendant is virtually uneducated. Mr. Schilling very candidly stated that he believed at the time of the renewal request that he had a choice to make in the matter and that was either to sue the defendant immediately or renew the loans. He further testified that he relied upon the truth and veracity of the financial statement in reaching his decision to renew.
Absent from the financial statement given to the lender but listed on Schedule A-3 of the bankruptcy petition are numerous obligations which can be categorized as unsecured “open account” debts, six of which are dated prior to 1969; others in the group give a specific month in 1969 when contracted and others show only 1969, no month being given. These details are noticed in recognition of the fact that at least those six bearing dates prior to January 10, 1969, were, without doubt, in effect at the time of the execution of the financial statement. They represent professional medical and legal services and one is for a sizeable sum.
Secondary to the issue of the false financial statement is the plaintiff’s contention that the discharge should be denied because of evidence introduced at the trial that the items listed on the chattel mortgage as plaintiff’s security were unavailable for seizure or partially disposed of. In that regard, Finance System offered *586 proof that seizure under a writ of sequestration was attempted without success; however, the deputy who handled the matter did not testify and the defendant and his wife recalled no knowledge of it. They readily admitted, however, that most of the items were in their possession while others had been junked.
In assigned oral reasons, the trial judge ruled that the financial statement was not given with the intent to defraud the plaintiff nor did the plaintiff rely upon the statement in making the loan. That court further found that the lender was entitled to its security as listed on the mortgage. Judgment was rendered in the amount prayed for plus interest, attorney fees, and costs, restricted, however, to the value of the items listed as security. We affirm that judgment.
Turning first to the question of the alleged fraudulent financial statement, we note the provisions of U.S.C.A. Sec. 35(a) (2) (Bankruptcy Act Sec. 17(a) (2)), as amended in 1960, which are the following:
“(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * *
Clearly, then, a renewal note may be exempted from a discharge in bankruptcy where violations of that statute are sufficiently proved.
This court, in the case of Feliciana Finance Company v. Bateman, 194 So.2d 781 (La.App. 1st Cir. 1967), had occasion to observe:
“It has been the well settled law of this state, even prior to 1960, that for the above quoted provision of the Federal Bankruptcy Act to be applicable, the creditor relying thereon bears the burden of establishing: (1) The defendant made false representations; (2) Those representations were made with the intent of defrauding the plaintiff; (3) The plaintiff relied upon and was misled by the false representations. CHF Finance Company v. Jochum, 241 La. 155, 127 So.2d 534; Beneficial Finance Company, Inc. v. Gardache, La.App., 164 So.2d 132; Cash Finance Service No. 3, Inc. v. Rhoden, La.App., 145 So.2d 79; De Latour v. Lala, 15 La.App. 276, 131 So. 211; Seaboard Finance Corp. v. Stipelcovich, La.App., 176 So.2d 170.”
Applying each of these rules seria-tim to the case at bar, we have previously noted that the statement tendered by Terrell did omit six open accounts which were plainly in existence on the day of the loan renewal. Why they were not disclosed and thereby listed was not satisfactorily explained by Terrell in view of his admission that Schilling questioned him about such matters. However, with the exception of the bill to Dr. Kenneth Cranor in the amount of $367.00 the omission of the other accounts is insignificant. Even though the statement was not accurate, it was, nevertheless, not so misleading as to defendant’s financial picture or condition as to be materially false.
The second criteria that the plaintiff must prove is that the borrower rendered the false financial statement with the intent to defraud. We need not reach a decision in that regard as our finding in the first and third of these requisites precludes the necessity of a judgment in the second.
Also dispositive of the case at bar is the requirement that the lender must rely *587 on the false report if the discharge is to be denied as to the particular debt. Such reliance, of course, need only be partial. Mr. Schilling very truthfully stated that he believed his choice was to sue on the past due note or to renew it. He was aware of Terrell’s personal background and verified it with him in the office. He knew, therefore, that the borrower’s family included many children, that he was an hourly wage earner, and that between him and his wife, they were able to manage some $400.00 to $500.00 per month to support the family. Mr. Schilling also knew of his past satisfactory dealings with Terrell until the weeks immediately prior to the renewal and had judged him to be an honest man.
As an experienced manager in the loan industry with years of background in matters such as these, Mr. Schilling undoubtedly knew that to sue and attempt to garnish the defendant would surely cost Terrell his job or force him into bankruptcy to protect the job, which is exactly the eventual course of events here when other creditors sued. His chances of successful collection of the debt through judicial means must have appeared dubious to him; we are persuaded that his decision to renew Terrell’s obligation was undoubtedly finalized upon consideration, not of the financial statement before him, but upon their past dealings, what he knew of Terrell’s financial difficulties, the unlikely probability of judicial enforcement, and the fact that no more money would be advanced to Terrell upon the renewal. The trial judge found that the creditor did not rely upon the financial statement given by the customer and, absent a showing of manifest error, of which there is none, that opinion will not be disturbed. Mid-City Investment Co. v. Young, 238 So.2d 780 (La.App.lst Cir. 1970).
The plaintiff is entitled to the items given in security, as listed on the chattel mortgage, or the reasonable value thereof. Except for two or three items of furniture which were “junked” and, therefore, of no value, the remaining chattels, according to the evidence adduced on trial, are available to plaintiff and subject to legal process. Plaintiff has not been prejudiced by the abandonment of the worthless items of furniture and the effect of the discharge in bankruptcy has not been negated by defendant’s actions with regard thereto.
The judgment is, in all respects, affirmed, appellant to pay all costs of this proceeding.
Affirmed.