**In re Douglas Ray TALBOT & Patricia Easterly Talbot.**

**LOUISIANA NATIONAL BANK OF BATON ROUGE, Plaintiff,**

v.

**Patricia Easterly TALBOT, Defendant.**

**Bankruptcy No. 80–00497.**
**Adv. No. 81–0029.**

United States Bankruptcy Court,
M. D. Louisiana.

Nov. 16, 1981.

John D. Brady, Baton Rouge, La., for plaintiff.

Fred A. Blanche, III, Baton Rouge, La., for defendant/debtor.

## REASONS FOR JUDGMENT

A. LEON HEBERT, Bankruptcy Judge.

On November 18, 1980, the defendant in this matter, Patricia Easterly Talbot, along with her husband, filed a voluntary petition seeking relief under the provisions of Chapter 7 of Title 11 of the United States Code. A complaint to determine the dischargeability of a particular debt, pursuant to 11 U.S.C. § 523, was filed by the plaintiff in this matter, Louisiana National Bank of Baton Rouge, hereinafter referred to as "the Bank", on March 17, 1981. A hearing on the complaint was held on October 8, 1981, and for the reasons assigned herein it is the decision of this Court that the complaint be dismissed and the debt discharged.

It was adduced at the hearing on the complaint that the plaintiff had issued to the defendant a credit card, specifically a Master Charge card, with an initial line of credit in the amount of six hundred dollars

($600.00). The defendant exceeded her line of credit during the month of May, 1980, and during the period from May to the date of the filing of her petition, the defendant made only one payment on her account, on July 28, 1980, and did not reduce her balance below the assigned line of credit.

It is clear from the evidence that the Bank acquiesced in the defendant's excess over her assigned line of credit until September 24, 1980, when the Bank first attempted to make telephone contact with the defendant about her account. Apparently, the Bank did not consider until September 24, 1980, the charge limit as a material condition to the continued use of the credit card. In fact, the conclusion is almost inescapable, in light of the evidence, that "the Bank seemed more than willing to permit the charge to continue, with additions of high finance charges typical in such transactions." *Winters National Bank and Trust Company v. Gibson*, 1 B.C.D. 449, 450 (Bkrtcy.S.D.Ohio, 1974). To corroborate with this fact is the fact that the Bank issued the defendant a new credit card in August, 1980, renewing the account, despite the fact that the defendant had exceeded her assigned line of credit since May, 1980.

There is evidence that on each statement of the defendant's account there appeared a notation that no credit was available after May, 1980, but it was not until October, 1980, that the statements sought to notify the debtor that her account was seriously delinquent. The Court is satisfied that between the period from August, 1980 to October 17, 1980, the defendant did not have any knowledge of the complete disposition of her account, and what balance was due and owing on her account with the Bank. The defendant was aware up until August, 1980 that she had exceeded her credit, but she and her husband had separated in August, 1980, and thereafter her mail was not forwarded to her by her husband. However, the defendant became aware of the serious excess over her assigned credit limit with her contact, at her own initiative, with the Bank on October 17, 1980.

The Bank's witness testified that a letter, dated October 9, 1980, addressed to her husband's (and formerly the defendant's) address, was sent to the defendant notifying the defendant that the use of the credit card was cancelled and seeking the return of the credit card. The monthly statements of the account were previously sent to the same address. The revocation notice, however, was returned to the Bank unclaimed. These circumstances corroborate the fact that the defendant could not have known of the disposition of her account until October 17, 1980.

On October 17, 1980, according to the evidence, the defendant notified the Bank of her current address, and additionally sought the use of the card for a future purchase. The Bank authorized over the phone the contemplated purchase and subsequently made the correction on its files of the address change. There is no evidence in the record that after the October 17, 1980 telephone call the Bank sent a second revocation/cancellation notice to the defendant. It is clear that the Bank ratified the use of the Master Charge account after October 17, 1980, but the impetus behind the ratification is not clear.

The Bank was notified by letter dated October 14, 1980 from defendant's counsel that the defendant was considering the filing of a bankruptcy proceeding. The letter also sought information from the Bank as to the outstanding balance on any accounts the defendant may have with the Bank. Despite the notice to the Bank, the Bank ratified, on several subsequent occasions, the use of the credit card by the defendant. The only conclusion that can reasonably be drawn from the Bank's conduct is that it disregarded the notice of the contemplated bankruptcy, and it is now estopped from relying on that notice, until November 4, 1980, in its argument that debt was incurred without intent to pay.

On November 4, 1980, the Bank called defendant's counsel, and it is only from that point forward that any charges incurred by the defendant would be done so without the express ratification of the Bank. The Bank's reply to counsel's inquiry was dated October 28, 1980, and had listed an out-

standing balance of One Thousand One Hundred Thirty Seven Dollars and 62/100 ($1,137.62). Although the Bank introduced into evidence the monthly statements for a period ending November 25, 1980, it did not introduce any sales drafts upon which the defendant's name appears for a period from October 30, 1980 through November 10, 1980. The last sales draft introduced was for a purchase made on October 29, 1980. Consequently, the Bank has failed to prove that any purchases were made by the defendant after November 4, 1980.

The defendant alleged in her testimony that there were numerous unauthorized purchases made on her account. The sales drafts introduced into evidence clearly show that there are at least two styles of writing in which the defendant's name was affixed, particularly evident by the way the letter "T" in Talbot was written; however, there was no expert testimony regarding the handwriting. Despite the knowledge of the outstanding balance as of October 28, 1980, the defendant could not adequately contest any unauthorized uses of her charge card without possession of the statement, which she did not have until after the filing of the bankruptcy petition. Had she had the November statement, perhaps her statements filed in this proceeding would have listed the debt as "contingent" or "disputed". In light of the evidence, the Bank has failed to prove that all of the purchases made through October 29, 1980 were in fact authorized, despite whether defendant now claims they were not.

Although the plaintiff's counsel represents in his memorandum that the Bank is relying on the language of Section 523(a)(2)(A) of Title 11 of the United States Code, there is nothing in the plaintiff's complaint to make such a representation clear. The dischargeability of a claim, however, is not to be determined by the form of a complaint, but resort may be had to the entire record to ascertain whether it falls within the exception. *Greenfield v. Tuccillo*, 129 F.2d 854 (2d Cir., 1942). Though there may be variance between the theory of a complaint and plaintiff's proof, the pleadings are deemed amended to conform to the issues which were tried without ob-

jection. *Rule 715 of the Federal Rules of Bankruptcy Procedure.* Clearly,

"While the complaint is not a model of perfect draftsmanship, it does adequately allege grounds upon which the Court could proceed to trial upon the question of dischargeability of the debt due to the plaintiff Bank. Rule 8, Sub-section (f), of the Federal Rules of Civil Procedure provides that 'All pleadings shall be so construed as to do substantial justice' and this Court is of the opinion that Plaintiff's complaint does state facts upon which it would be entitled to relief. Any errors are of form rather than substance. Bankruptcy Courts are courts of equity and are primarily interested in doing substantial justice. They are not so much interested in the niceties of pleading." *In re Vines*, 430 F.Supp. 465 (N.D.Ala., 1977).

Section 523 of Title 11 of the United States Code enumerates several grounds upon which a creditor may seek to have a debt excepted from discharge. Taking the representation of plaintiff's counsel, this Court finds that the plaintiff relies on 11 U.S.C. § 523(a)(2)(A) which states that

"(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance [*sic,* refinancing] of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . ."

Section 523(a)(2)(A) of the present Bankruptcy Code is a slight modification of Section 17(a)(2) of the former Bankruptcy Act (11 U.S.C. § 35(a)(2) repealed 1978). S.Rep.No. 989, 95th Cong., 2d Sess. 78 (1978), *reprinted in* [1978] U.S.Code Cong. & Adm.News, 5787, 5864; therefore, the cases decided under former Section 17(a)(2) are not inconsistent, and can concurrently be read with Section 523(a)(2)(A).

The frauds included in the portion of Section 523(a)(2)(A) upon which the plaintiff seeks to prove (i.e. false pretense and false representation) are those which in fact

involve moral turpitude or an intentional wrong. *Collier on Bankruptcy* ¶ 523.08[4], p. 523–29 (15th ed., 1981). Fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. *Collier on Bankruptcy*, ¶ 523.08[4], n. 12, p. 523–29 (15th ed., 1981). The creditor must prove:

" '(1) That defendant made false representations; (2) that these representations were made with the intention of defrauding the plaintiff, and (3) that the plaintiff relied upon and was mislead by the false pretenses or representations.' *De Latour v. Lala*, 15 La.App. 276, 131 So. 211 at page 212 (1930); *CHF Finance Company, Inc. v. Jochum*, 241 La. 155, 127 So.2d 534 (1961); *CHF Finance Discount Company, Inc. v. Rhodes*, 237 So.2d 701 (La.App., 4th Cir., 1970)."

*King Finance Co. of New Orleans, Inc. v. Howard*, 265 So.2d 316 (La.App., 4th Cir., 1972).

■ Plaintiff's counsel is correct in his perception that this Court is holding the plaintiff to a strict burden of proof of fraud. Although fraud may be inferred (*In re Boydston*, 520 F.2d 1098, 1101 (5th Cir., 1975)), the plaintiff has the burden of proving that any alleged representations, if any there be, were knowingly and fraudulently made. *CHF Finance Co. v. Jochum, supra*.

■ This Court is merely applying as a standard the old adage

"[H]e who alleges fraud must prove it." *McClatchey v. Guaranty Bank & Trust Co.*, 228 La. 1103, 85 So.2d 6, 8 (1955). The plaintiff must prove more than that the fraud was probable or that the circumstances partook of a suspicious character and the plaintiff must establish the fraud by proof stronger than the mere preponderance of the evidence. *Sanders v. Sanders*, 222 La. 223, 239, 62 So.2d 284, 286 (1952). As a guide in cases of this nature, this Court relies upon Louisiana jurisprudence found in the case of *Accounts Supervision Co. v. Atley*, 89 So.2d 508, at page 511 (La.App., 1st Cir., 1956) wherein then First Circuit Court of Appeals Judge Tate stated that

"Something more than constructive fraud or fraud in law in procuring property on credit is required to except the claim from a discharge [citations omitted]."

"*[F]raud is never presumed*, and . . . to establish the fraud, exceptionally strong proof must be adduced [Many cases cited]."

(emphasis added).

■ Finally, this Court is bound by the decision of the United States Fifth Circuit Court of Appeals in the case of *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir., 1940), *cert. denied* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941). That decision stands for the proposition that purchasing goods on credit with no present intention of paying for them was not embraced by the Bankruptcy Act's proscription against obtaining property by false pretenses or false representations. In that case, debts were created through credit purchases while the debtor concealed insolvency or inability to pay, and those debts were still discharged. There is wisdom in District Judge Porter's statement that

"If *Caldwell*—decided by a divided court nearly 35 years ago and criticized by commentators—is obsolete, it is for the Fifth Circuit, not this Court, to say so."

*In re Boydston*, 391 F.Supp. 29, 30 (N.D. Tex., 1975), *affirmed* 520 F.2d 1098 (5th Cir., 1975).

■ Examining the evidence, it is clear that the plaintiff in this matter failed to carry its burden of proof. Initially, plaintiff failed to prove that all of the purchases made on the account were made by the defendant or an authorized agent of the defendant. Although the debtor would have been bound by the fraud of an agent acting in the scope of his authority (*Collier on Bankruptcy*, ¶ 523.08[4], p. 523–46 (15th ed., 1981)), her liability, had she been aware of the charges, would have been limited upon notification to the card issuer of any unauthorized use of her card. 15 U.S.C. § 1643. Succinctly, the plaintiff has failed to introduce sufficient evidence to adequately refute the defendant's testimony that all of the purchases were not made by her or an authorized agent. Additionally,

since the defendant did not have the monthly statements to contest any fraudulent use of her card, as she could pursuant to 15 U.S.C. § 1643, to limit her liability, her conduct during the period prior to filing of the bankruptcy proceedings cannot be construed by this Court as acquiescence of purchases other than those made by herself.

Secondly, the plaintiff has failed to prove that the debtor was anything other than reckless, irresponsible, and naive. There is nothing in the record to indicate that the debtor's conduct was that of a cold, calculated, sophisticated planning by one bent on financial deception. *In re Boydston, supra.* The plaintiff, therefore, has failed to prove sufficiently that any representations were made with an intent of defrauding the plaintiff. *King Finance Co. of New Orleans, Inc. v. Howard, supra.*

Finally, the plaintiff has failed to establish circumstances which could reasonably be construed as containing an atmosphere of false pretenses. As stated in *Matter of Curcio*, 1 B.R. 727 (Bkrtcy.E.D.Mich., 1979) at p. 729

> "The issuer of a credit card must make a choice. If it intends to rely upon an agreed charge limit, it must advise the holder of the card, who exceeds the limit, that he is not to continue to incur additional charges until he has made payments to get under his charge limit. If a Bank does not do so, it in effect waives the right to contend that charges incurred in excess of the stated limit constitute obtaining property by false representations or false pretenses."

In the matter at bar, despite the fact that the Bank was informed of the possibility that the debtor might declare bankruptcy, the Bank did not insist that the defendant refrain from making any further purchases. Rather, the Bank ratified subsequent purchases, knowing that the defendant might declare bankruptcy. In light of the evidence, the Bank really is estopped, by its former conduct in handling the entire transaction, from now seeking that the debt be excepted from the discharge. It is because of the plaintiff's failure to prove its case, despite the loose pleadings, and the conduct of the Bank as to this defendant

that this Court will sign an Order dismissing the complaint and discharging the debt at issue.

■ Although the defendant in her answer prayed only for costs, her counsel did add to the conclusion of the post trial memorandum this language:

> "WHEREFORE, debtor prays that the complaint of Louisiana National Bank be dismissed and that Louisiana National Bank pay all costs of this proceeding *and attorney fees.*"

(emphasis added). Since the Bankruptcy Code specifically provides that the Bankruptcy Court *shall* award attorney's fees if the debt is discharged (11 U.S.C. § 523(d)), the Court therefore awards defendant's counsel the sum of One Hundred Fifty Dollars and 00/100 ($150.00) in attorney's fees and assesses all cost against the plaintiff, Louisiana National Bank, and the Order heretofore mentioned will include said award and assessment.

Baton Rouge, Louisiana, November 16, 1981.