## The Chesapeake and Ohio Railway Co. v. Burkentine

*Donald B. Hoyt,* for plaintiff.

*John R. Burkentine* and *Patricia A. Burkentine,* pro se.

MILLER, *J.,* August 5, 1987—Plaintiff, the "Chessie System," filed this suit and request for injunctive relief against defendants alleging that defendants had gained access to plaintiff corporation's employee lists as well as confidential information concerning each of the employees. Plaintiff alleged that defendants have been using that information for their own personal gain and selling copies of the

lists to other parties, again for financial gain. Plaintiff further alleged that the information which defendants had obtained was confidential information and was· the sole property of plaintiff Chessie System.

The court issued an ex parte preliminary injunction against defendants and, after hearing, dissolved the temporary injunction pending a hearing on the merits.

At the hearing on the merits, the testimony established that the Chessie System maintains an employee master file on magnetic tape. Once each month the information is translated to microfiche in Chessie's computer system. One hard copy is made and about 10 other copies are distributed to various departments of the company. The information entered on the tape includes the individual employee's name, address, social security number, date of birth and other information which the company deems necessary. The employees of the Chessie System have been assured that the information given by them to the company for this purpose is and shall remain confidential.

During the fall of 1983, defendant John R. Burkentine contacted the director of payroll accounting for plaintiff and inquired about establishing a payroll deduction plan for the sale of individual retirement accounts to Chessie employees. The overture was turned down. In September 1983, both defendants met with the manager of the Maryland office of Educators Mutual Life Insurance Company and made application for employment with Educators. They told the manager that they could arrange access to the Chessie payroll system of several thousand employees. John Burkentine showed the manager of Educators Mutual Life Insurance Company a microfiche with many names

on it and sold the microfiche to Educators for $600. At defendant Burkentine's request, the company made the check payable to "Donald Hess." A questioned documents examiner testified that the check of Educators Mutual Life Insurance Company payable to Donald Hess bore an endorsement of Donald Hess and that handwriting was that of defendant John Burkentine. The checks given by Educators to defendant Patricia Burkentine were endorsed in the handwriting of Patricia Burkentine.

On January 23, 1984, defendants contacted Donald R. Vail, branch manager of the Towson, Maryland office of Transamerican Occidental Company and offered microfiche employee lists of the Chessie System to Mr. Vail for $500. In late 1983, defendants agreed to turn over to Bell National Insurance Company a list of approximately 50,000 names of Chessie employees and were paid the sum of $2,000 per month as an advance against commissions on sales to Chessie System employees for a period of several months. Defendants also agreed to sell the list of more than 50,000 names of Chessie employees to Craig Oliver, the president of Jefferson Financial Services Corporation sometime during 1984.

It is clear to the court that plaintiff employer has property rights in a composite list of its employees together with employee identification numbers, dates of employment, dates of birth, etc. While there is no case directly on point, at least one court has held that a company's computer programs are "property." *Hancock v. State,* 402 S.W. 2d 906 (Texas Crim., 1966). In *Hancock,* defendant argued that computer systems stolen from his employer did not constitute corporal personal property and therefore could not be subject to theft. The court disagreed holding that computer programs were

clearly within the definition of "property" under the Texas Penal Code. Under Maryland law, "property" has similarly been broadly defined as embracing everything that has exchangeable value. *Samet v. Farmers' and Merchants' National Bank of Baltimore,* 247 F. 669 (1917). It seems obvious that the list of plaintiff's employees does, in fact, have an ascertainable value. While the individual items such as a single employee's data may have no commercial value, the composite listing has proven to have economic value to a commercial user by the very fact of the sale and exchange for money of that list to various companies.

Having concluded that a company business record such as a computer program listing personnel information may be considered "property," we conclude that plaintiff company has the right to recover ownership from one who has improperly obtained the property. Neither defendant has ever been employed by plaintiff corporation, and there was no evidence to show how they obtained the lists. Defendants have denied possession of the employee lists, but we are satisfied that the testimony has established that they have, in fact, possessed those lists. They claim no right to possession of those lists, and the testimony of the plaintiff has established that defendants have had no right to possess them.

For purposes of this decision, it is important that we define the exact nature of the employee lists. Restatement of Torts, § 757, provides:

"A trade secret may consist of any formula, pattern, device, or compilation of information which gives (the owner) an opportunity to obtain advantage over competitors who do not known or use it."

Plaintiff company used the employee lists to conduct its business and to make the information

contained therein available to those insurance companies with whom it maintained contractual relations pursuant to employee benefit programs. By the unauthorized disclosure of the information on the employee lists to insurance companies and other financial agencies competing with those handling plaintiff's employee benefits, the door is opened to confusion, misrepresentation, misunderstanding and distrust on the part of employees who have been under the impression that the information given by them to their employer was confidential.

. We conclude, therefore, that defendants have unfairly and unlawfully used trade secrets belonging to plaintiff employer and have derived financial gain from that use. We further conclude that equity has jurisdiction, to enjoin such unlawful use and to require defendants to respond in damages.

Accordingly, we enter the following

## DECREE NISI

And now, this August 5, 1987, defendants are enjoined from possessing, selling or disclosing the contents, whether on a master list or microfiche cards, of employee information belonging to plaintiff Chessie System. Defendants shall return any such material which they have in their possession within 30 days of this date to plaintiff Chessie System. We further direct that defendants shall pay to the Chessie System as damages a sum to be determined by the court upon a further hearing to be held on Tuesday, September 22, 1987, beginning at 9:30 a.m. in Courtroom 3 of the York County Courthouse. In the absence of exceptions filed within the time permitted by law, this decree will become final as of course.